**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS J. WENDORF and KATHY WENDORF, on behalf of plaintiffs and several classes, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10-cv-01658 |
| GALE LANDERS d/b/a Fitness Formula – Oak Park, FFC – Oak Park, Fitness Formula Clubs – Oak Park, Fitness Formula – Old Town, FFC – Old Town, Fitness Formula Clubs – Old Town, Fitness Formula – West Loop, FFC – West Loop, Fitness Formula Clubs – West Loop, Fitness Formula – Lincoln Park, FFC – Lincoln Park, Fitness Formula Clubs – Lincoln Park, Fitness Formula – Gold Coast, FFC – Gold Coast, Fitness Formula Clubs – Gold Coast; SOUTH LOOP FITNESS, LLC d/b/a Fitness Formula – South Loop and FFC – South Loop; OAK PARK FITNESS, LLC; LAKEVIEW FITNESS EAST LLC d/b/a Fitness Formula Clubs – East Lakeview; LAKEVIEW FITNESS INVESTORS LLC d/b/a Fitness Formula Clubs – Halsted Street; U.S. FITNESS LLC d/b/a Fitness Formula Clubs – Union Station; and DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Andersen |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

## I.    STATEMENT OF FACTS

On January 15, 2007 Plaintiffs enrolled in a 12-month membership at a Fitness Formula

health club in Oak Park.  (*Compl. ¶17*)[1]  In connection with their enrollment, Plaintiffs signed a

written membership agreement ("Membership Agreement"), the term of which was for twelve

months beginning on April 1, 2007 ("Initial Term").  (*Compl. Exh. "A"*)  At the expiration of the

Initial Term, the Membership Agreement became renewable by Plaintiffs on a month-to-month

---

[1]        A copy of the Complaint is attached hereto as Exhibit 1.

basis beginning on April 1, 2008. Following completion of the Initial Term, Plaintiffs are required to provide 45 days written notice of cancellation. (*Compl. Exh. "A"* ¶9) Plaintiffs fulfilled their Initial Term and have chosen to continue their membership, uninterrupted, and have used the Oak Park club every month since April 1, 2008.

Plaintiffs initially made their monthly payments via an automatic charge to their credit card. (*Compl.* ¶25) Plaintiffs later opted to have their monthly payments automatically deducted from the their bank account via an electronic funds transfer ("EFT"). (*Compl.* ¶25)

In their Membership Agreement, Plaintiffs agreed that Fitness Formula "reserves the absolute right to increase your dues." (*Compl. Exh. "A"*, ¶5) To that end, from time to time the amounts payable by Plaintiffs were increased. (*Compl.* ¶26) Plaintiffs do not allege that they objected to these increases.

In December 2009 Plaintiffs were sent a letter informing them that in lieu of another increase to dues each month, Plaintiffs would be assessed a one-time membership increase for the year 2010 in the amount of $60, payable with along with the January 2010 monthly dues ("December 2009 Letter"). (*Compl.* ¶26(c)) The Plaintiffs claim to have objected to the $60 charge (*Compl.* ¶29), but they do not allege that they voiced any such objections prior to the January 2010 $60 assessment. The December 2009 Letter also informed Plaintiffs that their membership had been upgraded effective January 1, 2010 to include free access to two additional Fitness Formula clubs. (*Compl. Exh. "B"*)

On March 15, 2010 Plaintiffs filed a Class Action Complaint ("Complaint") on behalf of themselves and several classes alleging various causes of action arising out of one-time membership charges to members at various Fitness Formula clubs. Plaintiffs have brought claims under the Electronic Funds Transfer Act (Count I), Illinois Physical Fitness Services Act

(Count II) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III), as well as for breach of contract (Count IV) and conversion (Count V). Plaintiffs, however, have failed to state any viable cause of action and, therefore, the Complaint should be dismissed in its entirety.

## II.     STANDARD

In *Munch v. Sears, Roebuck and Co.*, 2008 U.S. Dist. LEXIS 76822 (N.D.Ill. Sept. 30, 2008), this Court recently addressed the standard for dismissal under *Fed.R.Civ.P.* 12(b)(6).

> In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, F.3d 485, 486 (7th Cir.2002). In order to survive a motion under Rule 12(b)(6), the complaint must provide the defendant with "fair notice of what the … claim is and the grounds upon which it rests." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir.2007) (citing *Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964, 167, 167 L.Ed.2d 929 L, Ed.2d 929 (2007)). The allegations in the complaint must also be "enough to raise a right to relief above a speculative level." *Bell Atl.*, 127 S.Ct. at 1965.

*Id.* at *7. In this case, Plaintiffs have failed to allege facts sufficient to raise their right to relief above the speculative level. As such, the Complaint should be dismissed in its entirety.

## III.    ARGUMENT

### A.      Plaintiffs' Electronic Funds Transfer Act Claim Fails To Allege An Unauthorized Electronic Transfer, Therefore It Should Be Dismissed

Plaintiffs allege that Defendants violated the Electronic Funds Transfer Act ("EFTA") by debiting Plaintiff's bank account the one-time membership dues increase of $60. (*Compl.* ¶33) Plaintiffs claim that Defendants' conduct constituted an "unauthorized electronic funds transfer" pursuant to EFTA (Id.) Because Plaintiffs admit that they preauthorized Defendants to make transfers from their account, Plaintiffs cannot allege an "unauthorized electronic transfer".

### 1. Plaintiffs Admit That They Preauthorized Electronic Transfers

Plaintiffs admit that per the terms of the Membership Agreement they signed, Plaintiffs preauthorized Defendants to make EFTs from Plaintiffs' account. (*Compl.* ¶¶25, 32)("All debits by Fitness Formula Clubs to [sic] members' bank accounts for monthly membership dues are preauthorized electronic funds transfers.") Plaintiffs also preauthorized Defendants to withdraw from Plaintiffs' accounts money for "any services charged the previous month if applicable." (*Compl. Exh. "A"*) Furthermore, Plaintiffs admit that the Membership Agreement gave Defendants the right to increase the membership dues. (*Compl.* ¶52, *Exh. "A"* ¶5) As such, Plaintiffs preauthorized transfers that may vary in amount.

EFTA allows for consumer to preauthorize EFTs that may vary in amount. It provides, in pertinent part, that:

§1693e – Preauthorized Transfers

(b) In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount . . . the designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Board, of the amount to be transferred and the scheduled date of the transfer.

15 U.S.C. §1693e(b). Pursuant to EFTA, the Board of Governors of the Federal Reserve System has issued "Regulation E" to carry out the purposes of EFTA. 12 C.F.R. 205 *et seq.* Regulation E, in pertinent part, provides as follows:

§205.10 Preauthorized transfers.

When a preauthorized electronic transfer from the consumer's account will vary in amount from the previous transfer under the same authorization or from the preauthorized amount, the designated payee . . . shall send the consumer written notice of the amount and the date of the transfer at least 10 days before the scheduled date of the transfer.

12 C.F.R. 205.10(d)

Here, Plaintiffs admit that Defendants provided Plaintiffs with advance notice of both the amount and scheduled date of transfer: $60 on January 1, 2010. (*Compl.* ¶26, *Exh. "A", Exh. "B"*) Indeed, Plaintiffs do not allege that Defendants gave at least 10 days notice to Plaintiffs of the $60 increase, nor do *Plaintiffs allege that Defendants failed to provide notice as is required by §1693e(b)*. There can be no question that the $60 EFT of which Plaintiffs now complain was a preauthorized transfer and therefore, Plaintiffs' EFTA claim must be dismissed.

## 2.     Plaintiffs' Fail To Allege An Unauthorized Electronic Transfer

Even though Plaintiffs admit that they preauthorized transfers that may vary in amount, Plaintiffs claim that Defendants violated by EFTA by making an "unauthorized electronic funds transfer." (*Compl.* ¶33) Plaintiffs, however, fail to allege an unauthorized electronic transfer in violation of EFTA.

EFTA, in pertinent part, defines "unauthorized electronic transfer" as follows:

> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer ***and from which the consumer receives no benefit***, but the ***term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved the transfers by such other person are no longer authorized***, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

15 U.S.C. §1693(a)(11)(emphasis added).

Here, even though Plaintiffs conclusorily allege that they did not provide Defendants with the actual authority to initiate the $60 EFT, Plaintiffs must also allege that they did not receive a benefit. Plaintiffs have not, and cannot do so. Not only did Plaintiffs choose to continue their monthly membership and continue to utilize the services offered by the health club, but they also received an upgrade to their membership to include free access to two

additional Fitness Formula clubs.  (*Compl. Exh. "B"*)  Because Plaintiffs cannot allege that they did not receive a benefit from the $60 EFT, their EFTA claim fails.

Furthermore, EFTA expressly states that it is not an "unauthorized electronic fund transfer" if the consumer furnished the account access unless the consumer notified the financial institution that the recipient was not authorized to initiate transfer.  15 U.S.C. §1693(a)(11)  Here, Plaintiffs admit that they furnished Defendants with access to their account  (*Compl.* ¶¶25, 32) and they do not allege that they notified their financial institution that Defendants were not authorized to make the $60 EFT.  Without these allegations, Plaintiffs fail to establish that the $60 EFT was an unauthorized electronic transfer in violation of EFTA and, therefore, Plaintiffs' EFTA claim must be dismissed.

**B.      Plaintiffs Fail To Properly Allege A Violation Of The Illinois Physical Fitness Services Act, Therefore it Should be Dismissed**

Plaintiffs also allege that Defendants violated the Illinois Physical Fitness Services Act ("IPFSA") by increasing member payment obligations without the execution of a new contract. (*Compl.* ¶51)  Plaintiffs' claim is contrary to the plain language of IPFSA.

IPFSA requires that each physical fitness contract be in writing (815 ILCS §645/4) and that the total contract price be stated in the contract (815 ILCS §645/5).  Appropriately, Plaintiffs do not allege that the Membership Agreement fails these requirements.  The sole basis of Plaintiffs' IPFSA claim is their conclusory and self-serving allegation that Defendants failed to require execution of a *new* membership agreement when they increased membership dues by $60.  Plaintiffs' claim is belied by the language of IPFSA itself.

Section 8(c) of IPFSA provides that fitness contracts may give the customer the option to renew the initial contract for consecutive periods of not more than 1 year each for reasonable consideration not less than 10% of the cash price of the original membership.  815 ILCS §645/8.

6

Section 8(c) does not require the execution of a new written contract *even though it expressly contemplates for a price increase to the consumer*.  815 ILCS §645/8(c)  Even after a price increase to the consumer, Section 8 expressly states that the initial contract is *renewed*. Therefore, Plaintiffs' allegation that the $60 increase to membership dues after the Membership Agreement's Initial Term expired required execution of a new membership agreement amounts to nothing more than a legal conclusion that cannot withstand a motion to dismiss.  *Mitchell v Archibald & Kendall, Inc.* 573 F2d 429 (7th Cir. 1978)(courts are not required to accept legal conclusions that may be alleged or that may be drawn from pleaded facts).   Therefore, Defendants did not violate IPFSA and Plaintiffs' IPFSA claim fails.

**C.**     **Plaintiffs' Illinois Consumer Fraud Act Claim Fails To State a Claim Therefore it Should be Dismissed**

Plaintiffs next assert that Defendants' violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") when they violated IPFSA (*Compl. ¶*62), and when Defendants  unfairly increased Plaintiffs' membership dues with less than 60 days notice (*Id.* ¶63).  Because Plaintiffs cannot establish a violation of IPFSA, they cannot establish a violation of ICFA.  Furthermore, Plaintiffs failed allege a knowing violation of IPFSA and failed to satisfy the *Fed.R.Civ.P. 9(b)* heightened pleading standards when alleging "unfair" conduct by Defendants.

**1.**     **Plaintiffs' ICFA Claim Must Be Dismissed Because It Is Predicated Entirely on the Faulty IPFSA Allegations**

Plaintiffs claim that pursuant to 815 ILCS §505/2Z, a violation of IPFSA constitutes a violation of the ICFA. (*Compl. ¶*62)  Accordingly, because Plaintiffs have failed to state a claim for a violation of IPFSA, Plaintiffs' corresponding ICFA allegations must be dismissed as well.

### 2. Plaintiffs Have Not Alleged a Knowing Violation of IPFSA

Even assuming *arguendo* that Plaintiffs have alleged facts sufficient to state a claim for an IPFSA violation, Plaintiffs' ICFA claim requires more: it requires an allegation that Defendants "knowingly" violated IPFSA. As the federal district court stated in granting the defendant's motion to dismiss an ICFA claim predicated on a non-willful violation of IPFSA:

> Section 2Z of the ICFA enumerates fourteen other Illinois statutes, including the IPFSA, that if knowingly violated constitute an unlawful practice within the meaning of the ICFA…. Kim's claim fails, however, because he does not allege that Riscuity *knowingly* violated the IPFSA…. Under the provision of the ICFA relied upon by Kim, without a knowing violation of the IPFSA, there is no violation of the ICFA.

*Kim v. Riscuity, Inc.*, No. 06 C 1585, 2006 WL 2192121 at *4 (N.D. Ill. July 31, 2006) (granting motion to dismiss ICFA claim predicated on a non-willful IPFSA violation) (citations omitted, emphasis in original).

Here, as in *Kim*, Plaintiffs' ICFA claim fails because they have not alleged a knowing violation of IPFSA. (*Compl.* ¶62) Therefore, Plaintiffs' ICFA claim fails.

### 3. Plaintiffs Failed To Sufficiently Plead "Unfair" Conduct And Therefore Their ICFA Claim Fails

Plaintiffs also claim that pursuant to 815 ILCS §505/2, Defendants unfairly increased their payment obligations effective within less than the 60 days required to terminate the Membership Agreement. (*Compl.* ¶63) Plaintiffs, however, failed to satisfy the *Fed.R.Civ. P. 9(b)* heightened pleading standards when alleging "unfair" conduct by Defendants.

The ICFA provision upon which Plaintiffs rely, Section 505/2, states in pertinent part as follows:

> …unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or

omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS §505/2  To state an ICFA claim, Plaintiffs must prove (1) a deceptive act or practice by Defendants, (2) Defendants intent that Plaintiffs rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to Plaintiffs (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149, 776 N.E.2d 151, 160 (2002).

In determining whether a practice is "unfair" under ICFA, courts are guided by the following factors: (1) whether the practice even if not unlawful offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it results in substantial injury to consumers. *Ekl v. Knecht*, 223 Ill. App. 3d 234, 585 N.E.2d 156 (2nd Dist. 1991).

It is well-settled that Federal Rule 9(b) applies not just to common law fraud claims, but also to claims under consumer fraud statutes. *See Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005)(ICFA claims "must be plead with the same specificity as that required under common law fraud"); *Munch v Sears, Roebuck and Co.*, 2007 U.S. Dist. LEXIS 62897, *11 and n.4 (N.D. Ill. Aug. 27, 2007)(dismissing claims under ICFA for failure to plead with particularity as required by Rule 9(b)).  As such, plaintiffs claiming ICFA violations are required to satisfy the heightened Rule 9(b) pleading standards. *See Eromon v. Grand Auto Sales*, 351 F. Supp. 2d 825, 827 (N.D. Ill. 2004); *Jiang v. Allstate Ins. Co.*, 199 F.R.D. 267, 272 (N.D.Ill. 2001); *Endo v. Albertine*, 812 F. Supp. 1479, 1495 (N.D. Ill. 1993).  Pursuant to Rule 9(b), Plaintiff must plead

statutory fraud claims with particularity. *Daniels v. Bursey*, 313 F. Supp.2d 790, 801 (N.D. Ill. 2004). Rule 9(b) requires that the circumstances of the fraud be plead in detail. Thus, to satisfy this heightened pleading requirements of Rule 9(b), Plaintiffs must plead "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See Miller v. Showcase Homes, Inc.*, No. 98-C-2009, 1999 WL 199605 at *2 (N.D. Ill. March 31, 1999)(under Rule 9(b), plaintiff must state "'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated'")(internal citations omitted).

Here, Plaintiffs fail to allege with Rule 9(b) specificity a deceptive practice. Defendants presented Plaintiffs with a 1-year Membership Agreement. After the expiration of the Initial Term, the Agreement was renewed on a month-to-month basis by Plaintiffs. Plaintiffs admit that they agreed that Defendants could increase Plaintiffs' membership dues. (*Compl.* ¶64) Even though Plaintiffs did not know how much the future increases could be, Plaintiffs knew at the time they chose to enter into the Membership Agreement that their membership dues could be increased by an undisclosed amount. Plaintiffs do not allege that they were coerced into signing the contract. When presented with the $60 increase and the membership upgrade to include access to two additional Fitness Formula Clubs, Plaintiffs continued to renew their monthly Membership Agreement and to receive the benefits of the health club. Although Plaintiffs alleged that they had an objection to the increase, they certainly do not allege that they ever voiced those objections to Defendants. Indeed, Plaintiffs do not allege with Rule 9(b) specificity who made the alleged objected, in what form the objection took place (*e.g.* verbally, via e-mail, via letter) and to whom the objection was voiced.

Plaintiffs also fail to allege with Rule 9(b) specificity "unfair" conduct because they do not plead that they did not have any alternative but to pay the $60 assessment. *See Tudor v. Jewel Food Stores*, 288 Ill. App. 3d 207 (1st Dist. 1997). Plaintiffs fail to allege that they communicated any objections to Defendant prior to the $60 EFT and they fail to allege any specific facts surrounding their so-called objection. What is clear is that Plaintiffs continued to receive the benefits and services offered by the health club and do to this day.

Moreover, the sole basis of Plaintiffs' ICFA claim is the allegation that Defendants notified Plaintiffs of the $60 increase within "less than the 60 days required to terminate the [Membership Agreement]." (*Compl.* ¶63) There is nothing in the Membership Agreement signed and agreed to by Plaintiffs that required Defendants to provide Plaintiffs with 60 days notice of an increase to membership dues. (*Compl. Exh. "A"*) In fact, Plaintiffs' allegation is contrary to the plain and unambiguous terms of the Membership Agreement. After completion of the Initial Term, only 45 days notice of cancellation was required. (*Compl. Exh. "A"* ¶9); *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449 (7th Cir. 1998)(when a written instrument contradicts the complaint's allegations the exhibit trumps the allegations). Even assuming that it would be an "unfair" practice in violation of the ICFA to increase Plaintiffs membership dues, Plaintiffs fail to allege that Defendants did not provide Plaintiffs with 45 days notice of the $60 EFT.

Accordingly, Plaintiffs' ICFA claim should be dismissed in its entirety for failure to plead with particularity as required by Federal Rule 9(b).

**D.      Plaintiffs Fail To Sufficiently Plead A Breach of Contract**

Plaintiffs allege that Defendants breached the Membership Agreement by virtue of the alleged IPFSA violation. (*Compl.* ¶75) Accordingly, because Plaintiffs have failed to state a

claim for a violation of IPFSA, Plaintiffs' breach of contract claim likewise fails and must be dismissed as well. To the extent that Plaintiffs' breach of contract claim is based solely upon the "imposition of one-time charges" (independent of any violation of IPFSA)(*Compl.* ¶73), Plaintiffs' claim is belied by the unambiguous language of the Membership Agreement itself.

Here, Plaintiffs admit that they agreed that Defendants could increase Plaintiffs' membership dues. (*Compl.* ¶64, *Exh. "A"* ¶5) Even though Plaintiffs did not know how much the future increases could be, Plaintiffs knew at the time they chose to enter into the Membership Agreement that their membership dues could be increased and that those amounts would be withdrawn via EFT. Plaintiffs also admit that Defendants provided Plaintiffs with advance notice of both the amount and scheduled date of transfer: $60 on January 1, 2010. (*Compl.* ¶26, *Exh. "A", Exh. "B"*) Plaintiffs then continued to receive the benefits and services offered by the health club and to do this day.

When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. Therefore, courts must look to the contract rather than to averments in the complaint. *Northern Ind. Gun & Outdoor Shows*, 163 F.3d 449. Indeed, a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment. *Bond v. Aguinaldo*, 256 F. Supp. 2d 810, 813 (N.D. Ill. 2003). Here, the Membership Agreement clearly and plainly allowed Defendants to increase membership dues and to withdraw those amounts via EFT. Therefore, Plaintiffs' have not alleged a breach of the Membership Agreement and this claim must be dismissed.

### E.    Plaintiffs Fail to Plead Their Claim For Conversion

Finally, Plaintiffs allege that Defendants unlawfully converted the $60 membership dues increase. (*Compl.* ¶85)  Plaintiffs, however admit that they authorized Defendants to increase membership dues and to initiate EFTs from their account.

To plead conversion, Plaintiffs must allege facts of: (1) an *unauthorized* and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof. *Mid-America Fire & Marine Ins. Co. v. Middleton*, 127 Ill.App.3d 887, 891, 468 N.E.2d 1335 (4th Dist. 1984); *Craig v. Citicorp Savings*, 219 Ill.App.3d 142, 147, 578 N.E.2d 1331, 1335 (5th Dist. 1991)(emphasis added).

Plaintiffs admit that they preauthorized Defendants to make EFTs from Plaintiffs' account. (*Compl.* ¶¶25, 32)("All debits by Fitness Formula Clubs to [sic] members' bank accounts for monthly membership dues are preauthorized electronic funds transfers.")  Plaintiffs also preauthorized Defendants to withdraw from Plaintiffs' accounts money for "any services charged." (*Compl. Exh. "A"*)  Furthermore, Plaintiffs admit that Defendants had the right to increase the membership dues. (*Compl.* ¶52, *Exh. "A"* ¶5)  As such, Plaintiffs preauthorized transfers that may vary in amount.  In light of these admissions, Plaintiffs have not, and cannot, plead the unauthorized assumption of control over Plaintiffs' funds.  Even though Plaintiffs alleged that they had an objection to the $60 EFT, they in no way allege that they ever voiced those objections to Defendants.  Therefore, Plaintiffs' conversion claim must be dismissed.

### F.    Plaintiffs' Request for Punitive Damages Must Be Stricken

In the event that Plaintiffs' IPFSA, ICFA or conversion claims survive, Defendants move to strike Plaintiffs' claim for punitive damages as it is improper.

The Illinois Supreme Court articulated the standard for awarding punitive damages in *Loitz v. Remington Arms Co.*, 138 Ill.2d 404 (1990): "[s]ince the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate — which is to say, *conduct involving some element of outrage similar to that usually found in crime.*" *Id.* at 415-16 (emphasis added). The conduct must be outrageous, either because the defendant's acts are done "with an evil motive or because they are done with reckless indifference to the rights of others." *Id.*

The conduct alleged by Plaintiffs do not begin to rise to the exacting standard set forth by the Illinois Supreme Court. *See Spires v. Mooney Motors, Inc.*, 229 Ill.App.3d 917, 924, 595 N.E.2d 225, 229 (4th Dist. 1992)(affirming trial court ruling that complaint did not state claim for punitive damages, where allegations were that defendant failed to warn plaintiff of machine's history of malfunctions). Because Plaintiffs' allegations do not clear the necessary threshold for meriting punitive damages, and because punitive damages are not favored in Illinois, (*see Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 188 (1978)), the requests for punitive damages must be stricken. Furthermore, Plaintiffs did not seek leave of the Court before filing their request for punitive damages as required under 735 ILCS 5/2-607.1, *see also LaSalle Nat'l Bank v. Willis*, 378 Ill.App.3d 307, 323, 880 N.E.2d 1075, 1088 (1st Dist. 2007)(affirming dismissal of action where plaintiff failed to obtain leave of the Court before filing claim for punitive damages).[2]

## IV. CONCLUSION

For the aforementioned reasons, GALE LANDERS; SOUTH LOOP FITNESS, LLC; OAK PARK FITNESS, LLC; LAKEVIEW FITNESS EAST LLC; LAKEVIEW FITNESS

---

[2] One court has observed that 2-607.1 is a procedural rather than a substantive rule of law, and thus not binding on federal courts. *Belkow v. Celotex Corp.*, 722 F.Supp. 1547 (N.D. Ill. 1989).

INVESTORS LLC; and U.S. FITNESS LLC request the Court dismiss Plaintiffs' Complaint in

its entirety.

                                     Respectfully submitted,

                                     GALE LANDERS; SOUTH LOOP FITNESS, LLC; OAK
PARK FITNESS, LLC; LAKEVIEW FITNESS EAST
LLC; LAKEVIEW FITNESS INVESTORS LLC; and U.S.
FITNESS LLC


                                     s/ Bart T. Murphy
                                     By one of their attorneys

Bart T. Murphy, Esq. (#6181178)
Jenée M. Straub, Esq. (#6270698)
Ice Miller LLP
2300 Cabot Dr.
Ste. 455
Lisle, IL 60532
630.955.0555

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on June 25, 2010 he caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois and a copy of which will be served on the counsel listed below by the Clerk's ECF/CM system:

| | |
|---|---|
| Cathleen M. Combs | ccombs@edcombs.com |
| Daniel A. Edelman | dedelman@edcombs.com |
| James O. Latturner | jlatturner@edcombs.com |
| John Robel | jrbuslaw@yahoo.com |
| Thomas Everett Soule | tsoule@edcombs.com |

s/Bart T. Murphy

Bart T. Murphy
Ice Miller LLP
2300 Cabot Dr., Ste. 455
Lisle, IL 60532
(630) 955-6392

16