### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **THOMAS J. WENDORF, et al.** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **No.  1:10-cv-01658** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **GALE LANDERS, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |

### OPINION AND ORDER

On January 15, 2007, plaintiffs in this putative class action, Kathy D. Wendorf and

Thomas J. Wendorf, entered into a signed gym membership agreement with defendant Gale

Landers doing business as Fitness Formula Oak Park.  The agreement stipulated, "Monthly dues

will be charged in advance on the first business day of each month (along with any services

charged the previous month if applicable)."  Complaint, Exhibit A (Dkt. No. Att.1, p. 1 of 2).

The agreement was for a minimum of twelve dues-paying months, after which time membership

could be terminated at any time upon 60 days written notice.[1]  The membership agreement

stated, "We reserve the absolute right to increase your dues."  At some time after the agreement

was entered into, plaintiffs signed an electronic fund transfer ("EFT") authorization.  It stated, "I

authorize my bank to make my payments by the method indicated below and post it to my

account."  In a letter dated December, 2009, sent less than 60 days before implementation of its

---

[1] Paragraph 9 of the form contract states (or at least implies) that month-to-month memberships
may be terminated on 45 days written notice.  The parties do not address this apparent internal
inconsistency, and it is not material here.

terms, defendant gave plaintiffs notice that "[i]n lieu of a change in monthly dues, there will be a nominal one-time charge" of $60 added to the January monthly dues. Plaintiffs were not asked to agree to the charge. Plaintiffs notified defendant (whether before or after the assessment came due is not alleged) that they objected to the $60 charge. Further, defendant declined to permit plaintiffs to terminate the contract on less than 60 days notice. Pursuant to the EFT authorization, during the first week of January, 2010 defendant caused plaintiffs' bank to transfer $60 from their bank account to defendant, in addition to the regularly monthly membership dues.

Plaintiffs allege that this $60 transfer was a violation of the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*[2] Plaintiffs also allege that defendant's activities violated the Illinois Physical Fitness Services Act, 815 Ill. Comp. Stat. 645/1 *et seq.* ("PFSA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* ("ICFA"). Additionally, plaintiffs allege common law breach of contract and conversion claims against defendant. Defendant has moved to dismiss for failure to state a claim upon which relief may be granted. They contend the facts do not support any of plaintiffs' claims. For the reasons stated below the motion to dismiss is denied.

## ANALYSIS

Because the EFTA claim is the sole basis for this court's jurisdiction, this claim will be considered first. *See Doe–2* v. *McLean County Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 513 (7th Cir. 2010) ("[W]hen a district court dismisses the federal claim conferring original

---

[2] *See* 15 U.S.C. § 1693m(g) ("Without regard to the amount in controversy, any action under this section may be brought in any United States district court . . . within one year from the date of occurrence of the violation.").

2

jurisdiction . . . it relinquishes supplemental jurisdiction over any state-law claims under

28 U.S.C. § 1367(c)(3).").

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a

claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp*. v.

*Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6)

motion, the court takes as true all facts in the complaint and draws all reasonable inferences in

favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule

12(b)(6) motion, the complaint must provide the defendant with notice of the claims and

establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). At the same time, the plaintiff need not plead legal

theories. *Hatmaker* v. *Mem'l Med. Ctr.*, --- F.3d ----, 2010 WL 3385191, at *1 (7th Cir. Aug. 30,

2010). Rather, it is the facts that count.

**Count I: Electronic Funds Transfer Act**

The EFTA permits "preauthorized electronic fund transfers," defined as "an [EFT]

authorized in advance to occur at substantially regular intervals[.]" 15 U.S.C. § 1693a(9). All

debits by defendant to plaintiffs' bank accounts for membership dues were preauthorized EFTs.

Section 1693e of the EFTA elaborates on the provisions governing preauthorized transfers:

> (a)     A preauthorized [EFT] from a consumer's account may be authorized
> by the consumer only in writing, and a copy of such authorization shall
> be provided to the consumer when made. . . .

> (b)     In the case of preauthorized transfers from a consumer's account to the
> same person which may vary in amount, the financial institution or
> designated payee shall, prior to each transfer, provide reasonable advance
> notice to the consumer, in accordance with regulations of the Board, of
> the amount to be transferred and the scheduled date of transfer.

Plaintiffs' theory of liability is that the one-time charge was not authorized by the EFT agreement because it was neither a monthly dues payment nor a charge for services given the previous month. Plaintiffs thus allege that defendant violated the EFTA's restriction on preauthorized EFTs, which may be permitted by consumers "only in writing," a copy of which must be given "to the consumer when made."[3]  15 U.S.C. § 1693e(a); *accord* 12 C.F.R. § 205.10(b); *id.* Pt. 205 Supp. I, ¶ 10(b)(2).  Defendant contends that plaintiffs' EFT authorization for dues and services, plus the agreement that defendant could increase dues, permitted EFTs in any amount.

Plaintiffs have presented facts that, if true, would be sufficient to demonstrate that defendant violated the requirements for preauthorized EFTs established under 15 U.S.C. § 1693e(a).  The one-time charge was not covered by the plain terms of the original contract. Indeed, the December letter explicitly stated the charge was not a dues increase.  Neither can the charge fairly be classified as a charge for services of the previous month (a term undoubtedly intended to capture services such as classes, personal trainers, and such), particularly where the notice was applicable to the coming year.  Under the regulation that authorization terms must be

---

[3] Alternatively, plaintiffs allege that the $60 charge constituted an "unauthorized electronic fund transfer," which the EFTA defines as "an [EFT] from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit."  15 U.S.C. § 1693a(11).  This section appears to be inapplicable to the case before the court. Although the Seventh Circuit has never addressed whether the EFTA's prohibition on unauthorized EFTs applies to merchant-defendants, at least one federal Court of Appeals has held that an EFT initiated by a merchant may violate the EFTA's restrictions on *preauthorized* transfers (as enumerated in § 1693e) regardless of whether the EFT was also "*unauthorized*" under the statute.  *See Wike* v. *Vertrue, Inc.*, 566 F.3d 590, 594–95 (6th Cir. 2009) ("Whether the [EFT] is also 'unauthorized' under § 1693a(11) . . . matters only to whether the consumer, his financial institution or both will bear ultimate responsibility for a particular transfer the consumer later contests. . . . [I]t has nothing to do with whether [defendant] violated § 1693e(a).").  This court adopts the reasoning of the Sixth Circuit on this issue, and therefore addresses only whether the $60 charge violated §1693e(a).

4

"clear and readily understandable," Commentary to 12 C.F.R. Pt. 205, Supp. I, ¶ 10(b)(6). The authorization does not inform plaintiffs that charges outside dues and service charges were also contemplated. As such, the charge fell outside the scope of plaintiffs' preauthorization.[4] Plaintiffs thus state a claim under § 1693m, which confers a private right of action upon consumers against "any person who fails to comply with any provision of this subchapter." Defendant's motion to dismiss the EFTA claim is therefore denied.

Because plaintiffs' sole federal claim survives defendant's Rule 12(b)(6) motion, this court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1693m(g).

**Count II: Illinois Physical Fitness Services Act[5]**

As defendant provides physical fitness services, all contracts entered into between defendant and plaintiffs must comply with the PFSA. In pertinent part, the PFSA imposes the following restrictions on physical fitness services contracts:

> Every contract for physical fitness services shall be in writing and shall be subject to this Act. All provisions, requirements and prohibitions which are mandated by this Act shall be contained in the written contract before it is signed by the customer. A copy of the written contract shall be given to the customer at the time the customer signs the contract. . . .
>
> Every contract for physical fitness services shall set forth the customer's total payment obligation for services to be received pursuant to the contract.

---

[4] The device enabled defendant to garner revenue that it would not have obtained under its membership agreement had it increased dues in a like amount. Plaintiffs were required to pay the full 2010 fee before they could cancel. As a result, defendant collected $60 that it would not have collected under the terms of the membership agreement. If defendant had increased dues in an equal amount, it would have collected the money at a rate of $5 per month. As one may assume that some members would cancel throughout the year for a variety of reasons, defendant's use of EFT authorizations to collect the $60 one-time charge worked to its financial benefit in a manner not contemplated by the membership agreement.

[5] The court's jurisdiction over the state law claims rests on 28 U.S.C. § 1367(a).

815 Ill. Comp. Stat. 645/4, 645/5. The PFSA also provides that "any contract for physical fitness services which does not comply with the applicable provisions of this Act shall be void and unenforceable." *Id.* 645/9(c).

Plaintiffs allege that defendant "increas[ed] the member's payment obligation without execution of a new contract complying with the PFSA." Complaint ¶ 51. Plaintiffs note that although their contract stated that "[t]he Club reserves the absolute right to increase your dues," it did not "state the amount of or formula for any such increase, the total payment obligation on the contract under such increased rate, the time of any such increase, or the term of any such increase." *Id.* ¶ 52. Whether or not the statute permits broad clauses such as the right to raise dues at any time, absent notice of a change in terms sufficiently in advance to permit the member to withdraw from the agreement before such change is imposed, a member could not be informed of the customer's total payment obligation for services to be received pursuant to the contract. As such, it fails to set forth the customer's total payment obligation for service to be received pursuant to the contract.

Therefore, defendant's motion to dismiss the PFSA count is denied.

**Count III: Illinois Consumer Fraud Act**

Plaintiffs also allege that the one-time charge violated the ICFA. Plaintiffs provide two alternative theories for this count. First, they contend that defendant's violation of the PFSA amounts to a violation of section 2Z of the ICFA.[6] *See* 815 Ill. Comp. Stat. 505/2Z ("Any person who knowingly violates the . . . [PFSA] . . . commits an unlawful practice under this Act.").

---

[6] Both the PFSA and the ICFA allow a consumer to recover damages in addition to reasonable costs and attorneys' fees. The PFSA allows recovery of *treble* damages, whereas punitive damages are recoverable under ICFA. *Compare* 815 Ill. Comp. Stat. 505/10a(a) (ICFA), *with id.* 645/11 (PFSA).

Second, they argue that imposition of the $60 charge was an 'unfair practice' in violation of section 2 of the ICFA. *See id.* 505/2.

### A.      Whether plaintiffs state a claim for violation of Section 2Z of the ICFA

Although plaintiffs have alleged facts sufficient to state a claim for a PFSA violation, defendant argues that plaintiffs' ICFA claim under section 2Z must fail because they have not alleged that defendant "knowingly" violated the PFSA.  In response, plaintiffs essentially argue that if defendant knew about the PFSA and violated it, it knowingly violated it. Although case law is sparse, it appears that violation of the PFSA does not constitute an violation of the ICFA unless the PFSA violation was committed knowingly, meaning with the intent to disregard the law. *Kim* v. *Riscuity*, No. 06 C 1585, 2006 WL 2192121, at *4 (N.D. Ill. July 31, 2006) ("[W]ithout a knowing violation of the [PFSA], there is no violation of the ICFA.").  *See Kunkel* v. *P.K. Dependable Constr., L.L.C.*, 902 N.E.2d 769, 776 (Ill. App. 2009) (holding that violation of Illinois Home Repair and Remodeling Act did not violate section 2Z of the ICFA because plaintiff failed to provide either evidence of defendant's state of mind or evidence supporting a *knowing* violation).  To determine that any violation of PFSA by a party who knew of the existence of it is also a violation of ICFA would render the "knowingly" requirement in section 2Z superfluous, as there would be no need to distinguish an inadvertent violation from a *knowing* violation.[7]

Plaintiffs also argue that the defendant did not charge plaintiffs the $60 fee accidentally, but rather they systematically sent out form letters to members informing them that the charge

---

[7] There are a total of 13 other state statutes whose violation also constitutes a ICFA violation if committed knowingly.  *See* 815 Ill. Comp. Stat. 505/2Z.

would occur at a designated time.  For reasons similar to those just stated, this argument is not sufficient to state a claim that defendant knew they were violating the PFSA when they charged plaintiffs $60.  That defendant sent a letter is evidence that it intentionally (and knowingly) charged plaintiffs' accounts, but it is not evidence that defendant knowingly violated the PFSA.

Plaintiffs do not allege that defendant intentionally violated the PFSA, and there are no allegations from which this can be inferred.  For these reasons, plaintiffs fail to state a claim that defendant violated section 2Z of the ICFA.

### B.      Whether plaintiffs state a claim for violation of Section 2 of the ICFA

Section 2 of the ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices."  815 Ill. Comp. Stat. 505/2.  To state a claim under section 2, a plaintiff must allege the following: (1) a deceptive act or unfair practice; (2) intent on defendant's part that plaintiff rely on the deception or unfair practice; and (3) that deception occurred in the course of conduct involving trade or commerce.  *Saunders* v. *Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 607 (Ill. App. 1996) (citing *Siegel* v. *Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992)).  Recovery may be obtained for unfair *and* deceptive conduct, and thus a consumer may allege that conduct is unfair under the ICFA without also alleging that the conduct is deceptive.[8]  *Robinson* v. *Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002).  The ICFA does not require actual reliance.  *Siegel*, 607 N.E.2d at 198.

Section 2 of the Act, 815 Ill. Comp. Stat. 505/2, directs that in determining whether conduct is unfair under the ICFA, interpretations of "unfair or deceptive practices" under section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), shall be considered.  In *FTC* v.

---

[8] In this case, plaintiffs only allege unfair practices.

*Sperry & Hutchinson Co.*, 405 U.S. 233 (1972), the Supreme Court set out three factors for establishing unfair conduct: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *Id.* at 244 n.5. The Illinois Supreme Court has interpreted *Sperry* to impose only a factor-based framework, not a three-part conjunctive test: "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three." *Robinson*, 775 N.E.2d at 961. To state a claim under the ICFA using any of the *Sperry* factors, "the plaintiffs must describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action." *Rockford Mem'l Hosp.* v. *Havrilesko*, 858 N.E.2d 56, 65 (Ill. App. 2006).

Plaintiffs state a claim under section 2 of the ICFA because they allege "it was unfair and violative . . . for the defendant to increase the consumer's payment obligation effective within less than the 60 days required to terminate the contract," and that plaintiffs "were injured by defendants' violations." Complaint, ¶¶ 63, 65. Courts interpreting the meaning of 'unfair practices' have held that a plaintiff states a claim under the ICFA where the defendant's conduct gave plaintiff no reasonable alternative to avoid incurring a charge or penalty. *See, e.g.*, *Hill* v. *PS Ill. Trust*, 856 N.E.2d 560, 569 (Ill. App. 2006) (holding that plaintiff sufficiently described an unfair practice under the ICFA when defendant's conduct gave plaintiff no reasonable opportunity to avoid a lien sale); *People ex rel. Fahner* v. *Hedrich*, 438 N.E.2d 924, 929 (Ill. App. 1982) (finding owner of mobile home park liable under ICFA for prohibiting park residents from selling their sites without paying a substantial transfer fee that the residents had no choice

but to pay); *see also Centerline Equip. Corp.* v. *Banner Pers. Serv.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008) ("Conduct is oppressive [under the ICFA] only if it imposes a lack of meaningful choice or an unreasonable burden on its target."). On the other hand, Illinois courts have declined to find an ICFA violation in the "total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness." *Saunders*, 662 N.E.2d at 608. Plaintiffs' ICFA claim falls into the former category and thus sufficiently describes an unfair practice. A crucial aspect of their section 2 allegation is that they could not avoid the charge by terminating their contract because of the 60-day notice requirement for cancellation.[9] The allegations sufficiently plead 'oppressive' conduct under the ICFA. Therefore, plaintiffs have stated adequately a claim for relief under section 2 of the ICFA.

Alternatively, defendant maintains that, even if plaintiffs' pleadings are sufficient to state an ICFA claim under the federal notice-pleading standards of Federal Rule of Civil Procedure 8, the claim must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b). The Seventh Circuit has expressly held that the heightened pleading requirement of Rule 9(b) does not apply to ICFA claims based on unfair practices (as opposed to those based on fraud or misrepresentation), as this one is. *See Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs.*, 536 F.3d 663, 669–70 (7th Cir. 2008).

For the foregoing reasons, the court denies defendant's motion to dismiss plaintiffs' claim made under section 2 of the ICFA.

### Count IV: Common law breach of contract

[9] Plaintiffs' complaint does not use specifically the words "immoral, unethical, oppressive, or unscrupulous," but "it alleges conduct that, if proven, could support the statutory definition of unfairness under the [ICFA]." *Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs.*, 536 F.3d 663, 672 (7th Cir. 2008). This is sufficient to state a claim under the ICFA. *Id.*

In addition to the federal and state-law claims, plaintiffs also allege that defendant breached the terms of the membership contract by imposing the one-time charge. Under Illinois law, statutes in effect when a contract is made are incorporated as a term of the contract. *Braye* v. *Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1303 (Ill. 1997). Therefore, a contract for physical fitness services implicitly incorporates all of the requirements listed in the PFSA. It follows that if either party violates any of the PFSA's requirements, that party has breached the contract. As explained above, plaintiffs have presented sufficient facts to plead a violation of the PFSA. In doing so, plaintiffs have stated a claim for breach of contract. Defendant's motion to dismiss Count IV is thus denied.

### Count V: Common law conversion

Plaintiffs' conversion claim is premised on the assertion the defendant took $60 from plaintiffs' bank account to which it was not entitled and refused to return it upon demand. Defendant rests its argument that plaintiffs do not state a cause of action for conversion on the same foundation as its defense to other claims, that the membership agreement permits defendant to increase dues and to withdraw funds for services charged.

Under Illinois law, a plaintiff must satisfy four elements to state a claim for conversion: (1) the plaintiff's right to the subject property; (2) plaintiff's unconditional right to immediate possession of the property; (3) plaintiff's demand for possession; and (4) the defendant's wrongful and unauthorized assumption of control or ownership over the property. *See Loman* v. *Freeman*, 890 N.E.2d 446, 461 (Ill. 2008).

When money is at issue, an action for conversion may be maintained "where the converted funds are capable of being described, identified, or segregated in a specific manner."

11

*Bill Marek's The Competitive Edge, Inc.* v. *Mickelson Group, Inc.*, 806 N.E.2d 280, 287 (Ill.

App. 2004). For example, in *Bill Marek's* the court held that the plaintiff, who had entered into a

sales representative agreement with a third party, stated a claim for conversion where the third

party mistakenly sent plaintiff's commission payments to defendant, who refused his demand for

the money. 806 N.E.2d at 282–86. Similarly, in *Roderick Dev. Inv. Co.* v. *Cmty. Bank of*

*Edgewater*, 668 N.E.2d 1129 (Ill. App. 1996), the court found conversion where a bank refused

to distribute to plaintiff his share of funds deriving from a trust account. The court pointed out

that the bank and the plaintiff were not in a debtor-creditor relationship but rather plaintiff was

entitled to obtain possession of the money. *Id.* at 1135. *See also Fonda* v. *Gen. Cas. Co. of Ill.*,

665 N.E.2d 439 (Ill. App. 1996) (finding conversion where defendant wrongfully failed to pay

plaintiff its share of insurance proceeds); *Addante* v. *Pompilo*, 25 N.E.2d 123 (Ill. App. 1940)

(finding conversion where plaintiff gave defendant $3,000 to transmit to his brother in Italy and

defendant used the money for his own purposes).

Whether Illinois courts would recognize an action for conversion once the defendant

debited the account, thus taking possession of $60 belonging to the plaintiff, is questionable.

Likely this situation would be treated as an action for breach of contract. After all, it is simply a

dispute about whether plaintiffs owed the defendant $60. If they do not, then the contract

remedy is to restore plaintiffs to their pre-breach position. Any tort relief is available under the

ICFA and PFSA. But because defendant does not directly raise this issue but rests on the

contract terms, the motion to dismiss will be denied. Plaintiffs should consider whether this

count is superfluous to its ICFA and breach of contract claims.

12

### B. Defendant's Motion to Strike Plaintiffs' Punitive Damages Claim

Defendant moves to strike plaintiffs' punitive damages claim, arguing that 735 Ill. Comp. Stat. 5/2-604.1 prohibits claims for punitive damages without prior leave of the court; further, it argues that the misconduct alleged was not sufficiently outrageous to warrant punitive damages. As to the former, this provision of Illinois law is a procedural provision that does not bind federal courts deciding state-law claims. *See Probasco* v. *Ford Motor Co.*, 182 F. Supp. 2d 701, 704 (C.D. Ill. 2002); *Wortherm* v. *Gillette Co.*, 774 F. Supp. 514, 515–17 (N.D. Ill. 1991); *Belkow* v. *Celotex Corp.*, 722 F. Supp. 1547, 1551 (N.D. Ill. 1989).

Under Illinois law, punitive damages may be awarded for conversion and for violations of the ICFA based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference. *See Dubey* v. *Pub. Storage, Inc.*, 918 N.E.2d 265, 277–80 (Ill. App. 2009); 815 Ill. Comp. Stat. 505/10a(a). Although judgment in favor of the defendant may be appropriate on the summary judgment or judgment as a matter of law during trial, the court allows the plaintiffs to proceed to proof of defendant's conduct meriting such damages. *See, e.g.*, *Dubey*, 918 N.E.2d at 278–81 (court did not abuse discretion in awarding punitive damages where storage company negligently directed the plaintiff to a wrong locker and then sold her stored goods, where additional factors such as indifference to plaintiff's concerns and litigation conduct suggested deceit or trickery were present).

### CONCLUSION

Defendant's Rule 12(b)(6) motion to dismiss plaintiffs' complaint is denied as to all counts, although plaintiffs may only pursue relief under section 2 of ICFA. The motion to strike

plaintiffs claim for punitive damages is denied.  This case will be called for a status hearing on January 11, 2011.

ENTER:

Dated: December 21, 2010

_____

JOAN HUMPHREY LEFKOW
United States District Judge

14