1

1           *TRANSCRIBED FROM DIGITAL RECORDING*

2              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4   THOMAS WENDORF, et al,              ) No. 10 C 1658
                                        )
5                     Plaintiffs,       )
                                        )
6            vs.                        )
                                        )
7   GALE LANDERS, et al.,               )
                                        )
8                     Defendants.       )

9                          *AND*

10  ROBERT O'BRIEN, et al.,             ) No. 10 C 2765
                                        )
11                    Plaintiffs,       )
                                        )
12           vs.                        )
                                        )
13  GALE LANDERS, et al.,               ) January 10, 2012
                                        ) Chicago, Illinois
14                    Defendants.       ) 4:40 p.m.

15        TRANSCRIPT OF PROCEEDINGS - STATUS
        BEFORE THE HONORABLE GERALDINE SOAT BROWN,
16                    MAGISTRATE JUDGE

17  APPEARANCES:

18  For Plaintiffs Wendorf:      EDELMAN COMBS LATTURNER & GOODWIN,
                                 LLC
19                               120 South LaSalle Street
                                 18th Floor
20                               Chicago, Illinois 60603
                                 BY:  MR. DANIEL A. EDELMAN
21                                    MR. THOMAS E. SOULE

22           TRACEY DANA McCULLOUGH, CSR, RPR
                   Official Court Reporter
23               219 South Dearborn Street
                       Room 1426
24              Chicago, Illinois 60604
                     (312) 922-3716
25  *NOTE:  PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION*

EXHIBIT
1
Bamberg No. 5208

2

```
 1   APPEARANCES CONTINUED:

 2                              MR. JOHN ROBEL
                               1135 Schneider Street
 3                             Suite #4D
                               Oak Brook, Illinois  60302
 4

 5   For Plaintiff O'Brien:    ZIMMERMAN LAW OFFICES, P.C.
                               77 West Washington Street
 6                             Suite 1220
                               Chicago, Illinois  60602
 7                             BY:  MR. THOMAS A. ZIMMERMAN, JR.
                                    MR. ADAM M. TAMBURELLI
 8
     For the Defendants:       ICE MILLER LLP
 9                             2300 Cabot Drive
                               Suite 455
10                             Chicago, Illinois  60532
                               BY:  MS. JENEE M. STRAUB
11
     ALSO PRESENT:
12
     FOR FITNESS FORMULA:       MR. GALE LANDERS, CEO
13                              MR. BRIAN SINGLETON, CFO
                                MR. CHRISTOPHER HORETH,
14                                  Corporate Accountant

15

16

17

18

19

20

21

22

23

24

25
```

1    THE CLERK:  10 C 2765, O'Brien versus Landers.  10 C

2    1658, Wendorf versus Landers.

3    THE COURT:  Okay.  I'd like everybody who

4    participated in the various settlement conferences to come to

5    the podium here.

6    I will state for the record that after a number of

7    settlement conferences an agreement has been reached among the

8    parties in both cases subject, of course, to the Court approval

9    since both of these are class actions.  And I would like

10   someone to recite the terms of the settlement.  I think, Miss

11   Straub, if you want to step forward and do that.

12   MS. STRAUB:  Sure.  I will take the first crack.  And

13   feel free for anyone to interject if there's some element

14   that's missing so that we aren't trying to play catch up.

15   MR. SOULE:  Oh, and Tom Soule for plaintiffs Wendorf.

16   THE COURT:  We'll all go on the record and identify

17   themselves and have you confirm that that's your understanding

18   of the settlement agreement.

19   MR. SOULE:  Okay.

20   THE COURT:  Okay.  Go ahead.

21   MS. STRAUB:  So first and foremost defining the

22   classes as Class A, being those current as of tomorrow, which

23   is January 11th, 2012.  Fitness Formula members who sustained a

24   one time charge through 2005 through 2011.  Class B being those

25   members who are current as of tomorrow who received a monthly

4

1    dues increase.  And Class C being former members as of tomorrow

2    who received either a one time charge or a monthly dues

3    increase.

4            MR. SOULE:  And for A, B, and C it covers 2005

5    through 2011.

6            MS. STRAUB:  Correct.  Right.  For A, B, and C.  For

7    Class A the relief will be $200 per person.  That to be divided

8    up, a hundred dollars being an automatic credit issued to the

9    member and a hundred dollar gift card issued to the member.

10   The gift card expires after 90 days from issuance and is

11   nontransferable.  The --

12           MR. LANDERS:  *The gift card can be applied against

13   their account also, correct.  That was always our

14   understanding.

15           THE COURT:  All right.  Do you want to go on the

16   record with your understanding of what the settlement is?

17           MS. STRAUB:  Is that it -- why don't you --

18           THE COURT:  First of all, I should have backed up.

19   Would you identify yourself for the record.

20           MS. STRAUB:  Oh.  Jenee Straub.

21           THE COURT:  And you're counsel for the defendants?

22           MS. STRAUB:  Counsel for all defendants.

23           THE COURT:  Okay.

24           MS. STRAUB:  Correct.

25           THE COURT:  All right.  So you're reciting the terms.

1    The question is is the gift card able to be applied as a credit

2    against the account balances?  The answer from the defendant is

3    no, the gift card is a hundred dollars.  The credit is a

4    hundred dollars.  The credit is applied.

5             MS. STRAUB:  It can be applied to --

6             MR. LANDERS:  The hundred dollar credit goes --

7             THE COURT:  Identify yourself for the record, please.

8             MR. LANDERS:  This is Gale Landers.  The credit

9    card -- the credit, hundred dollar credit goes against their

10   account.  We give them the gift card to use.

11            MR. ROBEL:  *Towards anything else.

12            MR. LANDERS:  Towards whatever they want to.

13            THE COURT:  Okay.  Okay.

14            *MR. ****:  It's 18 months -- well, you're going to

15   get --

16            MR. SOULE:  Oh.  She was going to say that too,

17   Judge.

18            MS. STRAUB:  Yes.

19            THE COURT:  A gift card for services in the health

20   club.

21            MS. STRAUB:  Or goods, correct.

22            THE COURT:  Services or goods in the health club.

23            MS. STRAUB:  Right.  Correct.

24            THE COURT:  Okay.  And that --

25            MS. STRAUB:  The gift cards and the credits are to be

6

1　rolled out among the members over an 18-month period.  The 18

2　months starting at final approval.  They are to be rolled out

3　per audit number, and that specifically we would agree upon.

4　At some point we would choose how that audit number would be

5　selected in terms of how that would be get rolled on over those

6　months.

7　　　　　MR. SOULE:  And audit number being the way we've been

8　talking about it over the last several months.

9　　　　　MS. STRAUB:  Right.  Right.

10　　　　MR. SOULE:  Okay.

11　　　　MS. STRAUB:  Not member I.D., the actual audit

12　number.

13　　　　MR. ROBEL:  Audit number is a code number for each

14　member that appeared in either the mail merge or the class, one

15　of the classes.

16　　　　THE COURT:  All right.  Now, you want to identify

17　yourself for the record.

18　　　　MR. ROBEL:  I'm sorry.  I apologize, Judge.  John

19　Robel, R-O-B-E-L, for plaintiffs Wendorf.

20　　　　MR. SOULE:  And Tom Soule for plaintiffs Wendorf.

21　　　　MR. EDELMAN:  And Daniel A. Edelman for the same

22　plaintiffs.

23　　　　THE COURT:  All right.  So when you speak up,

24　identify yourselves.  So, okay, Miss Straub.  Proceed.

25　　　　MS. STRAUB:  Miss Straub again.  And then for Class C

PDF created with pdfFactory trial version www.pdffactory.com

1 is the former members, and that is $200 a person.  And that is

2 to be made -- a claim made, and there is a floor of 15 percent

3 and a cap of 20 percent.  If the claims made for Class C do not

4 reach 15 percent, then the amount needed to reach that

5 15 percent floor would be a donation by Fitness Formula to the

6 Muscular Dystrophy Association, Chicago Chapter.  But in no

7 event shall the payout for Class C exceed 20 percent of the

8 total value for Class C, which at this point is -- will be

9 determined tomorrow when we determine the number of class

10 members in Class C.

11   MR. SOULE:  Which at present is 7,682, but they need

12 to run the numbers as of tomorrow.

13   MR. ROBEL:  *I believe when we talk about percentages

14 on Class C, the percentage of the class members multiplied by

15 the $200 per person number to address that floor that Miss

16 Straub referenced --

17   MS. STRAUB:  Correct.

18   MR. ROBEL:  -- of whatever it was.

19   MS. STRAUB:  Correct.

20   MR. SOULE:  And what about the dropouts before final

21 approval, you want to say something about that?

22   THE COURT:  One more point on the Class C.  If more

23 than 20 percent of the class makes a claim, there will be a pro

24 rata reduction in the distribution.

25   MS. STRAUB:  Correct.

PDF created with pdfFactory trial version www.pdffactory.com

1       THE COURT:  All right.  Go ahead.  Now, we got the

2   resigning members group.  Go ahead.

3       MS. STRAUB:  And for those A and B members who fall

4   into Class C after tomorrow, which is January 11th, those

5   members would get issued a check for the full $200 amount

6   mailed to their last known address, and that would be issued

7   within 60 days of the -- of when the final approval.

8       MR. SOULE:  And that's if they drop out between

9   January 11th and the date on which they would have been --

10      MS. STRAUB:  Oh, I'm sorry.  Not final approval.  It

11  would be issued within 60 days of when their membership was

12  terminated.

13      MR. SOULE:  Right.

14      MS. STRAUB:  I'm sorry.

15      MR. SOULE:  But the point is is that if they drop out

16  at any point between January 11, 2012 and the date on which

17  they would have gotten a credit.

18      MS. STRAUB:  Correct.

19      MR. ROBEL:  *But we don't know which date they would

20  have gotten a credit because we haven't selected those random

21  people yet.

22      MR. SOULE:  True.  We'll get there.

23      MS. STRAUB:  We'll work that out.

24      MR. EDELMAN:  Well, the numbers in each group, A

25  is -- we've been working on the basis of 2940; B, 1147; C,

1   7682. And the numbers will -- the final numbers will be run at

2   the close of business tomorrow. And everything is premised on

3   their being within 5 percent of the numbers I just recited.

4           MS. STRAUB: Correct.

5           MR. ROBEL: But those numbers in sequential order.

6   The first one being Class A, the second one being Class B, and

7   the third one being Class C.

8           MR. SOULE: Right.

9           THE COURT: Next.

10          MR. ZIMMERMAN: *You want to mention that the

11   resigning members don't count towards the Class C.

12          MS. STRAUB: That's fine. That the resigning

13   members -- Jenee Straub again for the defendants. That the

14   resigning members do not count towards the 15 to 20 percent

15   window for Class C.

16          MR. SOULE: And they don't have to send in a claim

17   form for the check.

18          THE COURT: All right. Next.

19          MS. STRAUB: There are incentive awards for the

20   individual plaintiffs of 8,000 for the Wendorfs, and that's

21   joint, and then 4,000 for Mr. O'Brien. The attorneys' fees in

22   total are $450,000 to be allocated among the plaintiffs'

23   counsels for an amount that they will determine, that

24   defendants won't have any involvement in.

25          MR. ZIMMERMAN: Or the Court will determine.

1          MS. STRAUB: Or the Court will determine.

2          MR. ZIMMERMAN: If there can't be reached an

3 agreement between the parties. Tom Zimmerman, Your Honor.

4 Z-I-M-M-E-R-M-A-N, on behalf of plaintiff O'Brien.

5          MS. STRAUB: The defendants --

6          THE COURT: And that covers -- that $450,000 is the

7 maximum the defendant will have to pay for attorneys' fees or

8 attorneys' costs.

9          MR. EDELMAN: That is correct.

10          MR. ROBEL: And the time for payout on the class

11 incentives and the legal fees.

12          MR. EDELMAN: Oh, that would be the effective date.

13          MS. STRAUB: Right, the effective date which I think

14 we're going to have to work out, may at most be 35 days --

15          MR. EDELMAN: Yes. If there's no --

16          MS. STRAUB: -- after final approval.

17          MR. EDELMAN: If there's no objection, we can have

18 the effective date five days after final approval. If someone

19 objects, we have to wait 35 days to see if an appeal or further

20 motion is filed. If there's an objection and an appeal, then

21 when the judgment becomes final.

22          MS. STRAUB: Correct. In the event that there --

23 this is Jenee Straub again for defendants. In any event that

24 more than 5 percent of the class members opt out, then

25 defendants have the option of voiding the settlement.

PDF created with pdfFactory trial version www.pdffactory.com

1         THE COURT: All right. And then the notice and the

2  administration are going to be handled by the defendant at the

3  defendants' expense. The defendant may -- or choose or not

4  choose to hire an independent claims administrator. The

5  plaintiff will have the right to confirm by sampling the

6  records to make sure that persons weren't mistakenly or

7  improperly excluded, and that at the conclusion there will be

8  an affidavit by the defendants as to the process by which the

9  claims were administered.

10         MS. STRAUB: Correct.

11         MR. SOULE: Also there will be a list of class

12  members provided by name, address, and audit number and the

13  group in which they fall. And there will be an affidavit

14  supporting that and how everybody got notice.

15         MR. EDELMAN: We'll --

16         THE COURT: Right. And that will be maintained

17  subject to a protective order.

18         MR. EDELMAN: Either counsel will maintain it or it

19  will be filed under seal so that we know who is bound by the --

20         THE COURT: Right. And those persons will release

21  the defendants from any claims relating to any of the -- claims

22  or causes of action relating to any claims in this complaint.

23         MS. STRAUB: Correct.

24         MR. EDELMAN: Extended through 2011 since --

25         MS. STRAUB: Correct. Correct.

1    THE COURT:  All right.

2    MR. SOULE:  And the full release from plaintiff.

3    MR. ROBEL:  Yes.

4    MS. STRAUB:  Right.  Yes, from all plaintiffs.

5    MR. ROBEL:  Right.

6    MS. STRAUB:  Correct.

7    MR. SOULE:  The three of them.

8    MR. EDELMAN:  Things like personal injury claims and

9 the like are not --

10    MS. STRAUB:  Correct.

11    THE COURT:  All right.

12    MR. ZIMMERMAN:  What else?  The accounting would be

13 filed.  Do you want to mention that?

14    MR. EDELMAN:  Yes, there will be an affidavit filed

15 at the conclusion of the claims administration process

16 detailing what was done.  Notice being sent out to various

17 people, checks being cut, credits being given, and so forth.

18    MS. STRAUB:  Correct.

19    MR. ROBEL:  There will also be an affidavit as to the

20 accuracy, completeness, and the like of the discovery

21 settlement data that has been served upon plaintiffs' counsel

22 to date.

23    MS. STRAUB:  Correct.

24    MR. EDELMAN:  And the Court retains jurisdiction

25 until the administrative process is complete.

1      MR. SOULE:  That's right.  I mean, so -- I mean, a

2  formal dismissal of the case --

3      MR. EDELMAN:  Will be in the future.

4      THE COURT:  Right.  First you have to have the

5  preliminary approval, and then you have to have the final, you

6  know, approval on the settlement.

7      MR. ZIMMERMAN:  And then you have to have 18 months

8  go by.

9      THE COURT:  Right.

10      MR. EDELMAN:  We're talking about 22, 23 months.  We

11  should set a date about 30 days in the future, attempt to get

12  the documents done by then.  We'll take the first draft, and

13  hope with luck present it by then.

14      THE COURT:  Okay.

15      MR. ROBEL:  Your Honor, if I may.  I believe that we

16  also discussed that the parties have contemplated the

17  plaintiffs would file a consolidated complaint for the purposes

18  of settlement to conform the class definition to what was

19  agreed to here.

20      THE COURT:  Okay.  What more do you want me to do?

21      MR. EDELMAN:  Set a date about 30 days in the future.

22      MR. ROBEL:  It's going to have to be a little bit

23  more than that.

24      MR. EDELMAN:  Okay.

25      MR. SOULE:  Like five weeks.

1       THE COURT:  You want me to keep this on a consent or

2  do you want to go back to Judge --

3       MR. EDELMAN:  We haven't reached agreement on that

4  yet.

5       THE COURT:  Okay.  Whatever you decide to do.  What

6  I'll do is just set another status date before me.  And then

7  you can decide what you want to do.  And it's perfectly fine

8  with me to go back to -- if you want to go back to Judge

9  Lefkow.  But whatever you decide to do in that respect.  But I

10  do want to follow up with that point about the division of the

11  fees among the attorneys.  So how would you propose that I do

12  that?  Do counsel for the plaintiffs want to just call in

13  sometime like later this week?  Make sure --

14       MR. SOULE:  Maybe not this week.

15       MR. ROBEL:  Tuesday or whatever.

16       MR. EDELMAN:  Beginning of next week.

17       MR. ROBEL:  Next week would be better, yes.

18       THE COURT:  Is that okay with defendants?  They just

19  call in and make sure that it's -- or we could just have a

20  joint call and they could tell us they've reached agreement on

21  it or what.  I just want to not have that piece drifting away.

22       MS. STRAUB:  Yes, I mean, if it's just a call, then

23  we'll participate in that.  But in terms of if they have to

24  file some sort of motion, we don't want to have to be involved

25  in that.

1    THE COURT:  Well, why don't we have a call and see

2  where we are.  That's my thinking.  Why don't we just have a

3  conference call and see where you are.  And, you know, it's

4  everyone's fond hope that this will all be resolved on some

5  kind of an amicable basis.  You folks are in a much better

6  position, and it would be much less expensive to reach an

7  agreement on this point.  So what we want to do is set a couple

8  more dates.  Now, Monday is Martin Luther King holiday.  Do you

9  folks want to call in Friday or Tuesday?

10    MR. ROBEL:  Tuesday would be better.

11    THE COURT:  Well, I mean, all you guys are going to

12  do is discuss the division of the attorneys' fees amongst the

13  various plaintiffs' counsel.

14    MR. ROBEL:  Well, why we would envision that

15  hopefully being easy, it may not be.

16    THE COURT:  Okay.  Well, Tuesday is okay with me.

17    MR. SOULE:  I have stuff in state court, but you can

18  handle it.

19    MR. EDELMAN:  Right, Tuesday the 17th.

20    THE COURT:  Yes.

21    MR. EDELMAN:  What time, Your Honor?

22    THE COURT:  All you have to do is pick up the phone

23  and call in.  All I want to know is what the status is, but I

24  want to keep track of it.  And I can do any time after 10:30.

25    MR. ZIMMERMAN:  *We've got a deposition at 10.  Is it

1  possible to do it in the afternoon?

2      THE COURT:  Sure.  Why don't we say 4:00 o'clock on

3  the 17th for a telephone call in both cases.

4      MR. EDELMAN:  Are you going to be available to take

5  care of it?

6      THE COURT:  I'm pulling time out of the air.

7      MR. SOULE:  Yes, I'll be around at 4 p.m. on the

8  17th.  Okay.  Good.

9      THE COURT:  So all you have to do, plaintiff --

10  plaintiffs, somebody get everybody on the line and call into my

11  chambers.

12      MR. SOULE:  Done.

13      THE COURT:  Okay.  Mr. Soule, you're in charge of

14  that.  Mr. Soule, you're going to have to set up the conference

15  call.  Now, is there any other term that anybody wants to put

16  on the record or any difference of opinion as to those terms?

17  And then I'm going to have everybody who participated in this

18  settlement conference come forward, state your name, your role

19  in the lawsuit, and acknowledge that that's -- yes, that's your

20  understanding of the settlement.

21      MR. SOULE:  Okay.  The parties will cooperate on

22  drafting a release and a settlement agreement and the notice

23  and work together to get that done.

24      MS. STRAUB:  Yes.

25      MR. EDELMAN:  I think we should state that it is our

1    intention to have an agreement as of today.

2              MR. SOULE:  Yes, Judge.

3              THE COURT:  Yes.  Yes, that is my understanding that

4    an agreement has been reached --

5              MR. ZIMMERMAN:  Yes.

6              THE COURT:  -- subject to the approval of the Court.

7    An agreement is reached today on the terms set out on the

8    record.

9              MR. EDELMAN:  Yes.

10             THE COURT:  Subject to the approval of the Court.

11   That whether or not the plaintiffs reach agreement among them

12   as to the attorneys' fees does not -- a division of the

13   attorneys' fees does not in any way prevent this from being a

14   settlement with the defendants.  Now, if that is your

15   understanding, then come forward, state your name for the

16   record, state your role in the lawsuit, and acknowledge that

17   that, yes, is your understanding of the agreement.

18             Mr. Edelman, you're right there.  Go ahead.

19             MR. EDELMAN:  Okay.  Daniel A. Edelman, counsel for

20   Wendorf.  That is our understanding of the agreement.

21             MR. SOULE:  And Tom Soule for plaintiffs Wendorf.

22   And that is our understanding as well, Your Honor.

23             MR. ROBEL:  John Robel for plaintiffs Wendorf.  That

24   is our understanding of the agreement.

25             MR. TAMBURELLI:  Adam Tamburelli on behalf of

1    plaintiff O'Brien.  That is my understanding of the agreement

2    as well.

3              MR. ZIMMERMAN:  Tom Zimmerman for plaintiff O'Brien.

4    That's my understanding.

5              MS. STRAUB:  Jenee Straub for defendants.  And that

6    is my understanding.

7              MR. SINGLETON:  Brian Singleton for defendant.  My

8    understanding.

9              THE COURT:  Okay.  What is your role, Mr. Singleton?

10             MR. SINGLETON:  CFO.

11             THE COURT:  CFO of the defendant.  Okay.  Sir.

12             MR. HORETH:  Christopher Horeth, corporate accountant

13   for the defendant, and that is my understanding.

14             MR. LANDERS:  Gale Landers, CEO of Fitness Formula.

15   That's my understanding.

16             THE COURT:  All right.  Great.  We're going to set

17   another date here for -- you know, just to follow up in court

18   to make sure all the pieces are in place.  And I would propose

19   the 16th of February.

20             MR. ROBEL:  *What day of the week is that, Judge?

21             THE COURT:  Thursday.

22             MR. SOULE:  I actually have a court appearance in

23   state appearance at the time.  Can we pick another date?

24             MS. STRAUB:  I've got conflicts that morning as well.

25             THE COURT:  Okay.  14th.  Anybody going -- the 14th,

PDF created with pdfFactory trial version www.pdffactory.com

1   14th going once.

2           MR. ROBEL:  *What time would that be?

3           THE COURT:  9:45.

4           MR. EDELMAN:  That's fine.

5           THE COURT:  The 14th.  Okay.  The 14th, 9:45 in

6   court --

7           MR. ZIMMERMAN:  *That's Valentine's Day.

8           THE COURT:  -- to make sure all the pieces are in

9   place.

10          MS. STRAUB:  And at that point I think that it would

11  be our intention hopefully to have a motion for preliminary

12  approval set for that time.

13          MR. EDELMAN:  We intend to proceed to draft it with

14  that in mind.

15          MR. SOULE:  Right.

16          THE COURT:  That would be great.  All right.

17          MR. ROBEL:  Thomas, you're going to handle the 23rd

18  date?

19          MR. SOULE:  Yes.

20          MR. EDELMAN:  Yes.

21          THE COURT:  Okay.

22          MR. EDELMAN:  Thank you.

23          MR. SOULE:  Oh, the 23rd date would be the date

24  before Judge Lefkow, which I'll call Mr. Dooley about.

25          THE COURT:  All right.  That makes sense to me.

20

1   Well, it's been a long process.  I think this was a carefully

2   negotiated -- I would say extremely carefully negotiated

3   settlement.  And I'm just glad we're able to do it, and with

4   two -- no, a minute and 17 seconds to spare.

5           MR. ROBEL:  Thank you, Judge.

6           THE COURT:  Have a good evening.

7           MR. EDELMAN:  We appreciate your --

8           MS. STRAUB:  We appreciate all your help.

9           MR. EDELMAN:  -- great efforts.

10          MR. SOULE:  Thanks very much, Your Honor.

11                          CERTIFICATE

12          I HEREBY CERTIFY that the foregoing is a true,

13   correctand  complete transcript of the proceedings had at the

14   hearing of the aforementioned cause on the day and date hereof.

15

16   */s/TRACEY D.M cCULLOUGH*              *January 24,201 2*

17   Official CourtR eporter              Date
     United States DistrictC ourt
18   Northern Districto f Illinois
     Eastern Division

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

# JOHN ROBEL
### *Counselor At Law*

1135 Schneider                                                        T     708-848-0801
Oak Park, Illinois  60302                                            F     708-848-4802

January 26, 2012

**Via EMail to "dedelman@edcombs.com"**

Daniel Edelman
Edelman Combs Latturner Goodwin LLC
120 South LaSalle Street
Suite 1800
Chicago, Illinois  60603

Re:     Wendorf v. FFC

Dear Dan:

I have carefully contemplated Ms. Combs' future involvement in the currently pending legal fee dispute with Tom Zimmerman, based upon recent conversations that I have had with her. As you know, I have not felt that Ms. Combs is dedicated to working with me and against Zimmerman, which has resulted in some conflict between her and me. From those conversations, it appears that Ms. Combs' position is that future commitment to the elimination or resolution of this Zimmerman matter is not worth much time or effort based upon the financial benefit to be achieved therefrom on behalf of your firm.

However, considering the Zimmerman correspondence to Bart Murphy dated July 13, 2010, which I have only recently received, combined with Murphy's response thereto, I know that Zimmerman could have easily been eliminated from this case at the outset. As you know, my constant position over the course of Zimmerman's involvement in this litigation has always been that he would prove to be an expensive menace to both the class and the lawyers involved based upon the tactics he was constantly employing and that he should be dealt with immediately to avoid the very predicament we now face. The attachment of the two correspondence I referenced to any motion available under these circumstances would have procured the result that I have been recommending. I also believe we would have been able to eliminate his involvement, or at least curtail it, even without those two documents.

As such, I expect full devotion to the resolution of the Zimmerman matter, irrespective of Ms. Combs' position, in a fashion that results in the smallest financial impact to myself, and to your firm, as is possible. I believe that the obligations and interests of my co-counsel are required to


EXHIBIT
2

be consistent and aligned with that of myself. I do not wish to be put in a position where I have to confront, or am confronted by, my co-counsel, especially when my assets are being expected to bear the brunt of the decision with which I most candidly disagreed.

If Ms. Combs can appreciate my position, then I believe her attendance at the upcoming conference can be of significant value to both of us, and I would welcome it. I also believe that the strong stance and commitment to counteracting Zimmerman that we must show will be the very catalyst that will serve to avoid the ongoing dispute and expense thereof. Please inform me of your thoughts so that we can align our strategy prior to our attendance tomorrow.


Truly Yours,

John Robel

2/17/2012

**From:** jrbuslaw@yahoo.com
**To:** Dan Edelman
**Sent:** 2/02/2012   1:14PM
**Subject:** Wendorf v. FFC

I told you last week to not begin any of the settlement documents.  From your last correspondence, it appears that you have not begun that work.  If you have begun any work, immediately forward me all documents that demonstrate any such claim.

You are to terminate all involvement on this file until you hear from me.  I will call you when I can get to it.  If your office receives any telephone calls on this matter, have your receptionist take a message and forward it to me.

EXHIBIT
3

2/17/2012

**From:** Cathleen M. Combs
**To:** 'jrbuslaw@yahoo.com'
**Cc:** Dan Edelman; Thomas Soule
**Sent:** 2/02/2012   3:17PM
**Subject:** Wendorf v. FFC

John:


We represented to the Court that we would handle the first draft of the settlement documents.  Tom is drafting them.  We have a fiduciary duty to the class to make sure the settlement is appropriately documented and administered.  You have no experience with administering a 19,000 member (or any) class.  We will continue to perform our obligations.


Cathleen M. Combs

Edelman Combs Latturner & Goodwin

120 S. LaSalle Street, Suite 1800

Chicago, IL 60603

(312) 739-4200

(312) 419-0379 fax

ccombs@edcombs.com

EXHIBIT
**4**

2/17/2012

**From:** Dan Edelman
**To:** Cathleen M. Combs; James Latturner; Tara Goodwin
**Cc:** Thomas Soule
**Sent:** 2/04/2012  11:49AM
**Subject:**

Robel called Saturday, February 4, 2012, at about 11 a.m.

Threatens to fire us  — I disagreed that he / plaintiff can

Demands that we resolve fees immediately, or else he would either fire us or upset settlement or both.

Offers us 50K to go away.  I said "no way".  He said he wanted a "buyout" of 290K, which if you give 110K to Zimmerman leaves 50K, so he was offering that.

Claimed that the clients had not agreed to the settlement and now don't like it (I believe that he said between sessions that he had talked to clients and they were on board, which I accepted since they were his clients).  My response was that I thought it was good deal and court has right to transmit it to class over objection of plaintiff (Skelton v. GM).

Claims that it is not good deal.  "So why did you agree to it on record if it was not good deal or not authorized?"  "I was forced to."  Presumably by Judge Brown.

Threatens to upset settlement, appeal, etc.

Claims that there was no undertaking to do any settlement documents (transcript says otherwise, might be construed as saying Robel and ECLG collectively had to do them but court clearly expects us to prepare documents)

Claims the 110K suggested by CMC was breach of agreement  — I said if his time is adjusted to appropriate amount that is about what we would get (if his time is 140K that is about what results).



2/17/2012

Blames us for not getting rid of Zimmerman

Claims that the 50K offer to Zimmerman was our idea, not his (!)

I said I would consult with my partners and let him know what we would do

Generally did not seem very rational or coherent.

My suggestion is to not negotiate with him, distribute what we believe to be appropriate settlement documents, and put problem before court – what is the value of a purported agreement with someone who has just stated that he is willing to disavow agreement recited on the record? Also, given above it is apparent that there may be more than normal work/ difficulty involved in approval process.

Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

120 S. LaSalle Street, Suite 1800

Chicago, IL  60603

(312) 739-4200

(312) 419-0379 (Fax)

dedelman@edcombs.com

www.edcombs.com

2/17/2012

**From:** Cathleen M. Combs
**To:** 'jrbuslaw@yahoo.com'
**Cc:** Thomas Soule; Dan Edelman; James Latturner
**Sent:** 2/06/2012   2:17PM
**Subject:** Wendorf

John:


We cannot agree to any division of fees at this point because:


1.     You have threatened to object to a  settlement which you agreed to on behalf of the Wendorfs on the record.

2.     That does not suggest that any agreement regarding fees would be honored.

3.     Filing an objection would result in a large and indeterminate amount of work.  An agreement at this point  would allow you to force us to work for nothing and allow you to recover more than an unsuccessful objector is entitled to.



Cathleen M. Combs

Edelman Combs Latturner & Goodwin

120 S. LaSalle Street, Suite 1800

Chicago, IL 60603

(312) 739-4200

(312) 419-0379 fax

ccombs@edcombs.com



EXHIBIT
6

**From:**   Dan Edelman
**To:**     'John Robel'
**Sent:**   2/16/2012   9:23AM
**Subject:** RE: Wendorf v. FFC

We will not engage in any premature negotiations with you over fees (prior to final approval).

We will not be presented with a inflated fee petition and a demand that we enter into an agreement that recognizes it as valid after receiving threats or claims that the court coerced your expressed agreement to the settlement, that you will fire us, or that you will cause your clients to object to the settlement.   There is no sum of money which would induce us to allow even the appearance that we have linked the desirability of the settlement to a dispute over the division of fees.

Since there is another plaintiff and the court has the right to present a reasonable settlement offer to the class, we will continue to prepare the documents in accordance with the court's directions and time frame.  If you can find the time to review them, please do so.  If you or the Wendorfs refuse to sign them but they are acceptable to everyone else, we will present them to the court with an explanation and ask to be appointed cocounsel for the class.  Ultimately we will ask the court to either award fees in accordance with our existing agreement, based on reasonable lodestars (I agree with Cathy Combs that reasonably calculated lodestars would result in about $110,000 to us), or just pay us our time, which is going to be reasonable, consistent with prior petitions we have filed and no more  than the existing agreement.

I have discussed this with my partners and this represents our consensus.

Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

120 S. LaSalle Street, Suite 1800

Chicago, IL  60603

(312) 739-4200

(312) 419-0379 (Fax)

dedelman@edcombs.com

www.edcombs.com



EXHIBIT
**7**

2/17/2012

From: John Robel [mailto:jrbuslaw@yahoo.com]
Sent: Thursday, February 16, 2012 8:35 AM
To: Dan Edelman
Subject: Wendorf v. FFC


Dan -


Pursuant to our conversation yesterday and the message I left you late yesterday afternoon, I will need to hear from you by 9:30AM today.


John

2/17/2012

**From:** tjwendorf@gmail.com
**To:** Dan Edelman
**Sent:** 2/16/2012 11:14AM
**Subject:** Wendorf vs. FFC Class Action

Dan,
On behalf of Katherine Wendorf, and myself, your representation in this litigation is terminated.
T.J. Wendorf

EXHIBIT
**8**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. WENDORF and<br>KATHY D. WENDORF,<br>on behalf of plaintiffs and several classes,<br><br>Plaintiffs,<br><br>v.<br><br>GALE LANDERS, doing business as<br>Fitness Formula - Oak Park, FFC - Oak Park,<br>Fitness Formula Clubs - Oak Park, Fitness<br>Formula - Old Town, FFC - Old Town, Fitness<br>Formula Clubs - Old Town, Fitness Formula –<br>West Loop, FFC - West Loop, Fitness Formula<br>Clubs - West Loop, Fitness Formula - Lincoln<br>Park, FFC - Lincoln Park, Fitness Formula<br>Clubs - Lincoln Park; Fitness Formula - Gold<br>Coast, FFC – Gold Coast, Fitness Formula<br>Clubs – Gold Coast; SOUTH LOOP FITNESS LLC,<br>doing business as Fitness Formula - South Loop<br>and FFC - South Loop; OAK PARK FITNESS,<br>LLC; LAKEVIEW FITNESS EAST LLC,<br>doing business as Fitness Formula Clubs - East<br>Lakeview ; LAKEVIEW FITNESS INVESTORS LLC,<br>doing business as Fitness Formula Clubs - Halsted<br>Street;  U.S. FITNESS LLC, doing business<br>as Fitness Formula Clubs - Union Station;<br>and DOES 1-10;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>1:10-CV-1658 |

DECLARATION OF JOHN ROBEL

John Robel declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that
the following statements are true:

1.  John Robel is a sole practitioner who has practiced independently as a
    lawyer for over six years.

2.  John Robel graduated from the University of Illinois at Champaign-
    Urbana in 1992 with a B.S. in investment and institutional finance.  He
    became a Certified Public Accountant shortly thereafter and spent

1


EXHIBIT
9

approximately five years working in the field of accounting. Entity structure and operation were focal points in his career as an accountant.

3.    John Robel graduated from Northern Illinois University in 1999 with an M.S. in investment and institutional finance.

4.    In 2000, John Robel graduated from The John Marshall Law School, *cum laude*, where he was a member of Law Review and authored *Insider Trading and Possession v. Use: Which Test Better Protects the Investor?*

5.    During law school, while simultaneously earning his M.S. in Finance, John Robel worked as an intern at the United States Securities and Exchange Commission, Division of Enforcement.

6.    From 2001 through 2005, John Robel was an associate at the law firm of Anthony G. Barone & Associates, P.C., in Oak Brook, Illinois. At that firm, he concentrated his practice in litigating broad-range issues involving commerce/business, insurance coverage, commercial and residential real estate, and myriad statutory and common law matters. His duties included all stages of the litigation process, from pleadings drafting through trial, hearing, or settlement, and appellate briefing. At that firm, he was primary counsel on hundreds of litigation files and was the damages consultant on various other litigation files in the firm. A significant number of litigation files were multi-state and were on behalf of or against publicly traded corporations. Due to his strong background in business, he also executed broad-range transactions relative to business formation and structuring, business operations and related contractual drafting, business licensure/regulation, and commercial real estate.

7.    From 2005 through the present, John Robel has worked as a sole practitioner. During this time, he has maintained and continued his strong focus on litigation while simultaneously executing myriad business and commercial real estate transactions.

8.    John Robel is a member of the Illinois Bar and is admitted to practice in the United States District Court for the Northern District of Illinois. He is a member of the Illinois State Bar Association.

/s/ John Robel
John Robel

John Robel, Counselor at Law
1135 Schneider
Oak Park, Illinois 60302
708-848-0801 (tel)
708-848-4802 (fax)

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WENDORF, et al,                     )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )        1:10CV1658
                                    )        Judge Lefkow
LANDERS, et al,                     )        Magistrate Judge Brown
                                    )
            Defendants.             )

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

**1.**      Edelman, Combs, Latturner & Goodwin, LLC, has 7 principals, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Tara L. Goodwin, Michelle R. Teggelaar, Francis R. Greene and Julie Clark, and 7 associates.

**2.       Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School.  From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases).  In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982.  From the end of 1985 he has been in private practice in downtown Chicago.  Virtually all of his practice involves litigation on behalf of consumers, mostly through class actions.  He is the co-author of Rosmarin & Edelman, Consumer Class Action Manual (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of Collection Defense (Ill. Inst. Cont. Legal Educ. 2008); Representing Consumers in Litigation with Debt Buyers (Chicago Bar Ass'n 2008); Predatory Mortgage Lending (Ill. Inst. for Cont. Legal. Educ. 2008), author of Chapter 6, "Predatory Lending and Potential Class Actions," in Real Estate Litigation (Ill. Inst. For Cont. Legal Educ. 2008), Chapter 4-1, "Truth in Lending Act," in Illinois Causes of Action (Ill. Inst. For Cont. Legal Educ. 2008), Predatory Lending and Potential Class Actions, ch. 6 of Illinois Mortgage Foreclosure Practice (Ill. Inst. For Cont. Legal Educ.2003);  Predatory Lending and Potential Class Actions, ch. 5 of Real Estate Litigation (Ill. Inst. For Cont. Legal Educ.2004); Illinois Consumer Law, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002);  Payday Loans:  Big Interest Rates and Little Regulation, 11 Loy.Consumer L.Rptr. 174 (1999); author of Consumer Fraud and Insurance Claims, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," Ohio Consumer Law (1995 ed.); co-author of Fair Debt Collection:  The Need for Private Enforcement, 7 Loy.Consumer L.Rptr. 89 (1995); author of An Overview of The Fair Debt Collection Practices Act, in Financial Services Litigation, Practicing Law Institute (1999); co-author of Residential Mortgage Litigation, in Financial Services Litigation, Practicing Law Institute (1996); author of Automobile Leasing:  Problems and Solutions, 7 Loy.Consumer L.Rptr. 14 (1994); author of

1



Current Trends in Residential Mortgage Litigation, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); author of Applicability of Illinois Consumer Fraud Act in Favor of Out-of-State Consumers, 8 Loy.Consumer L.Rptr. 27 (1996); co-author of Illinois Consumer Law (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, Attorney Liability Under the Fair Debt Collection Practices Act (Chicago Bar Ass'n 1996); author of The Fair Debt Collection Practices Act: Recent Developments, 8 Loy.Consumer L. Rptr. 303 (1996); author of Second Mortgage Frauds, Nat'l Consumer Rights Litigation Conference 67 (Oct. 19-20, 1992); and author of Compulsory Arbitration of Consumer Disputes, Nat'l Consumer Rights Litigation Conference 54, 67 (1994).  He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

3.    **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School.  From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993.  Her reported decisions include: Nielsen v. Dickerson, 307 F. 3d 623 (7th Cir. 2002); Chandler v. American General Finance, Inc., 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002);  Miller v. McCalla Raymer, 214 F. 3d 872 (7th Cir. 2000);  Bessette v. Avco Financial Services, 230 F. 3d 439 (1st Cir.2000); and  Emery v. American Gen. Fin., Inc., 71 F. 3d 1343 (7th Cir. 1995).  She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern, Central and Southern Districts of Illinois, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Tenth Circuit Court of Appeals, and United States District Court for the District of Colorado.  She is a member of the Northern District of Illinois trial bar.

4.    **James O. Latturner** is a 1962 graduate of the University of Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in Federal Practice Manual for Legal Services Attorneys (M. Masinter, Ed., National Legal Aid and Defender Association 1989); Governmental Tort Immunity in Illinois, 55 Ill.B.J. 29 (1966); Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations, 2 Loy.Consumer L.Rep. 64 (1990), and Illinois Consumer Law (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.  He is a member of the Northern District of Illinois trial bar.

5.    **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with

2

general honors, 1988)and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). She has been with the firm since her graduation and has participated in many of the cases described below. **Reported Cases.** Williams v. Chartwell Financial Services, LTD, 204 F.3d 748 (7th Cir. 2000); Hillenbrand v. Meyer Medical Group, 682 N.E.2d 101 (Ill.1st Dist. 1997), 720 N.E.2d 287 (Ill.1st Dist. 1999); Bessette v. Avco Fin. Servs., 230 F.3d 439 (1st Cir. 2000); Large v. Conseco Fin. Servicing Co., 292 F.3d 49 (1st Cir. 2002);; Carbajal v. Capital One, 219 F.R.D. 437 (N.D.Ill. 2004); Russo v. B&B Catering, 209 F.Supp.2d 857 (N.D.IL 2002); Garcia v. Village of Bensenville, 2002 U.S.Dist. LEXIS 3803 (N.D.Ill.); Romaker v. Crossland Mtg. Co., 1996 U.S.Dist. LEXIS 6490 (N.D.IL); Mount v. LaSalle Bank Lake View, 926 F.Supp. 759 (N.D.Ill 1996). She is a member of the Northern District of Illinois trial bar.

      6.    **Michelle R. Teggelaar** is a graduate of the University of Illinois (B.A., 1993) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D., with honors, 1997). **Reported Cases:** Johnson v. Revenue Management, Inc., 169 F.3d 1057 (7th Cir.1999); ; Hernandez v. Attention, LLC, 429 F. Supp. 2d 912 (N.D. Ill. 2005); Coelho v. Park Ridge Oldsmobile, Inc., 247 F. Supp. 2d 1004 (N.D. Ill. 2003); Dominguez v. Alliance Mtge., Co., 226 F. Supp. 2d 907 (N.D. Ill. 2002); Watson v. CBSK Financial Group, Inc., 197 F. Supp. 2d 1118 (N.D. Ill. 2002); Van Jackson v. Check 'N Go of Illinois, Inc. 123 F. Supp. 2d 1085 (N.D. Ill. 2000), Van Jackson v. Check 'N Go of Illinois, Inc., 123 F. Supp. 2d 1079, Van Jackson v. Check 'N Go of Illinois, Inc., 114 F. Supp. 2d 731 (N.D. Ill. 2000); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000); Vines v. Sands, 188 F.R.D. 302 (N.D. Ill. 1999); Veillard v. Mednick, 24 F. Supp. 2d 863 (N.D. Ill.1998); Sledge v. Sands, 182 F.R.D. 255 (N.D. Ill. 1998), Vines v. Sands, 188 F.R.D. 203 (N.D. Ill. 1999), Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. 2001); Binder v. Atlantic Credit and Finance, Inc., 2007 U.S. Dist. LEXIS 11483 (S.D. Ind. 2007); Carroll v. Butterfield Heath Care, Inc., 2003 WL 22462604 (N.D. Ill. 2003); Payton v. New Century Mtge., Inc., 2003 WL 22349118 (N.D. Ill. 2003); Seidat v. Allied Interstate, Inc., 2003 WL 2146825 (N.D. Ill. 2003) (Report and Recommendation); Michalowski v. Flagstar Bank, FSB, 2002 WL 112905 (N.D. Ill. 2002); Bigalke v. Creditrust Corp., 2001 WL 1098047 (N.D. Ill 2001) (Report and Recommendation); Donnelly v. Illini Cash Advance, 2000 WL 1161076 (N.D. Ill. 2000); Mitchem v. Paycheck Advance Express, 2000 WL 419992 (N.D. Ill 2000); Pinkett v. Moolah Loan Co., 1999 WL 1080596 (N.D. Ill. 1999); Farley v. Diversified Collection Serv., 1999 WL 965496 (N.D. Ill. 1999); Davis v. Commercial Check Control, 1999 WL 965496 (N.D. Ill. 1999); Sledge v. Sands, 1999 WL 261745 (N.D. Ill. 1999); Slater v. Credit Sciences, Inc., 1998 WL 341631 (N.D. Ill. 1998); Slater v. Credit Sciences, Inc., 1998 WL 299803 (N.D. Ill. 1998).

      7.    **Francis R. Greene** is a graduate of Johns Hopkins University (B.A., with honors, May 1984), Rutgers University (Ph.D., October 1991), and Northwestern University Law School (J.D., 2000). **Reported Cases:** Ruth v. Triumph Partnerships, 577 F.3d 790 (7th Cir. 2009); Handy v. Anchor Mortgage Corp., 464 F.3d 760 (7th Cir. 2006); Roquet v. Arthur Andersen LLP, 398 F.3d 585 (7th Cir. 2005); Tri-G, Inc. v. Burke, Bosselman & Weaver, 856 N.E.2d 389 (Ill. 2006); Johnson v. Thomas, 794 N.E.2d 919 (Ill.App.Ct. 2003); Hale v. Afni, Inc., 2010 U.S. Dist. LEXIS 6715 (N.D. Ill. 2010); Parkis v. Arrow Fin Servs., 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. 2008); Foster v. Velocity Investments, 2007 U.S. Dist. LEXIS 63302 (N.D.Ill. 2007); Foreman v. PRA III, LLC, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. 2007); Schutz v. Arrow Fin. Services, 465 F. Supp. 2d 872 (N.D. Ill. 2006); Pleasant v. Risk Management Alternatives, 2003 WL 22175390 (N.D. Ill. 2003); Hill v. Amoco Oil Co., U.S. Dist. LEXIS 1795 (N.D. Ill. 2003). He is a member of the Northern District of Illinois trial bar.

8. **Julie Clark** (nee Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** Qualkenbush v. Harris Trust & Savings Bank, 219 F. Supp.2d 935 (N.D. Ill.,2002); Covington-McIntosh v. Mount Glenwood Memory Gardens 2002 WL 31369747 (N.D.Ill.,2002), 2003 WL 22359626 (N.D. Ill. 2003); Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co., 377 Ill. App. 3d 642; 880 N.E.2d 205 (1ˢᵗ Dist. 2007); Western Ry. Devices Corp. v. Lusida Rubber Prods., 06 C 52, 2006 U.S. Dist. LEXIS 43867 (N.D. Ill. June 13, 2006); Nautilus Ins. Co. v. Easy Drop Off, LLC, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D. Ill. June 4, 2007); Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc., 07 C 5715, 2007 U.S. Dist. LEXIS 84425 (N.D. Ill. Nov. 14, 2007) ; Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 17, 2008); Sadowski v. OCO Biomedical, Inc., 08 C 3225, 2008 U.S. Dist. LEXIS 96124 (N.D. Ill. Nov. 25, 2008).

9.　　Associates

a.　　**Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** Clark v. Experian Info. Solutions, Inc., 2004 U.S. Dist. LEXIS 28324 (D.S.C. Jan. 14, 2004); DeFrancesco v. First Horizon Home Loan Corp., 2006 U.S. Dist. LEXIS 80718 (S.D. Ill. Nov. 2, 2006); Jeppesen v. New Century Mortgage Corp., 2006 U.S. Dist. LEXIS 84035 (N.D. Ind. Nov. 17, 2006); Benedia v. Super Fair Cellular, Inc., 2007 U.S. Dist. LEXIS 71911 (N.D. Ill. Sept. 26, 2007).

b.　　**Thomas E. Soule** is a graduate of Stanford University (B.A., 2000), and the University of Wisconsin Law School (J.D., 2003). **Reported Cases:** Murray v. Sunrise Chevrolet, Inc., 441 F.Supp.2d 940 (N.D. Ill. 2006); Iosello v. Leiblys, Inc., 502 F.Supp.2d 782 (N.D. Ill. 2007); Claffey v. River Oaks Hyundai, Inc., 486 F.Supp.2d 776 (N.D. Ill. 2007); Cicilline v. Jewel Food Stores, Inc., 542 F.Supp.2d 842 (N.D.Ill. 2008); Randolph v. Crown Asset Management LLC, 254 F.R.D. 513 (N.D.Ill. 2008); Irvine v. 233 Skydeck LLC, 597 F.Supp.2d 799 (N.D.Ill. 2009); Brittingham v. Cerasimo, Inc., 621 F.Supp.2d 646 (N.D.Ill. 2009); Clark v. Pinnacle Credit Services, LLC, 697 F.Supp.2d 995 (N.D.Ill. 2010); Wendorf v. Landers, 755 F.Supp.2d 972 (N.D.Ill. 2010); QuickClick Loans LLC v. Russell, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011).

c.　　**Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** Pietras v. Sentry Ins. Co., 513 F.Supp.2d 983 (N.D. Ill. 2007); Hernandez v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Sept. 25, 2007); Balogun v. Midland Credit Mgmt., 2007 U.S. Dist. LEXIS 74845 (S.D. Ind. Oct. 5, 2007).

d.　　**Tiffany N. Hardy** is a graduate of Tuskegee University (B.A. 1998) and Syracuse University College of Law (J.D.2001). **Reported cases:** Unifund v. Shah, 2001 Ill. App. LEXIS 61 (Ill. App. Feb. 1, 2011); Balbarin et. al. v. North Star et. al., 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011)(class certified); Manlapaz v. Unifund, 2009 U.S. Dist. LEXIS 85527 (N.D. Ill. Sept. 15, 2009); Matmanivong v. Unifund, 2009 U.S. Dist. LEXIS 36287 (N.D. Ill. Apr. 28, 2009); Kubiski v. Unifund, 2009 U.S. Dist. LEXIS 26754 (N.D. Ill. Mar. 25, 2009); Cox v. Unifund CCR Partners, 2008 C 1005 (N.D. Ill. Dec. 4, 2008) (Report and Recommendation for Class Certification); Ramirez v. Palisades Collection. LLC, 2008 U.S. Dist. LEXIS 48722 (N.D. Ill. June 23, 2008)(class certified); 2008 U.S. Dist. LEXIS 24921 (N.D. Ill.

Mar. 28, 2008); Cotton/Scott v. Asset Acceptance, 2008 U.S. Dist. LEXIS 49042 (N.D. Ill. June 26, 2008) (class certified); Ketchem v. American Acceptance Co., LLC, 641 F. Supp. 2d 782, 2008 U.S. Dist. LEXIS 49532 (N.D. Ind. June 26, 2008); D'Elia v. First Capital, 2008 U.S. Dist. LEXIS 22461 (N.D. Ill. Mar. 19, 2008).

        **e.**    **Zachary A. Jacobs** is a graduate of the University of South Dakota (B.S. 2002) and Chicago-Kent College of Law, Illinois Institute of Technology (J.D. 2007).

        **f.**    **Rupali R. Shah** is a graduate of the University of Chicago (B.A. 2004) and University of Illinois (J.D. *cum laude* 2007).

        **g.**    **Catherine A. Ceko** is a graduate of Northwestern University (B.A. 2005) and DePaul University (J.D. *summa cum laude* 2008).

    **10.** The firm also has 15 legal assistants, as well as other support staff.

    **11.**    Since its inception, the firm has recovered more than $500 million for consumers.  The types of cases handled by the firm are illustrated by the following:

    **12.**    **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, In re Mortgage Escrow Deposit Litigation, and MDL-1604, In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: ; Hamm v. Ameriquest Mortg. Co., 506 F.3d 525 (7th Cir. 2007); Handy v. Anchor Mortg. Corp., 464 F.3d 760 (7th Cir. 2006); Christakos v. Intercounty Title Co., 196 F.R.D. 496 (N.D.Ill. 2000); Johnstone v. Bank of America, N.A., 173 F.Supp.2d 809 (N.D.Ill. 2001); Leon v. Washington Mut. Bank, F.A., 164 F.Supp.2d 1034 (N.D.Ill. 2001);  Williamson v. Advanta Mortg. Corp., 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); McDonald v. Washington Mut. Bank, F.A., 99 C 6884, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); Metmor Financial, Inc. v. Eighth Judicial District Court, No. 23848 (Nev.Sup.Ct., Apr. 27, 1993); GMAC Mtge. Corp. v. Stapleton, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); Leff v. Olympic Fed. S. & L. Ass'n, 1986 WL 10636 (N.D.Ill. 1986); Aitken v. Fleet Mtge. Corp., 90 C 3708, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. 1991), and 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); Poindexter v. National Mtge. Corp., 91 C 4223, 1991 U.S.Dist. LEXIS 19643 (N.D.Ill., Dec. 23, 1991), later opinion, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); Sanders v. Lincoln Service Corp., 91 C 4542,1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); Robinson v. Empire of America Realty Credit Corp., 90 C 5063, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); In re Mortgage Escrow Deposit Litigation, M.D.L. 899, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 8, 1994); Greenberg v. Republic Federal S. & L. Ass'n, 94 C 3789, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

    **13.**    The recoveries in the escrow overcharge cases alone are over $250 million.  Leff was the seminal case on mortgage escrow overcharges.

    **14.**    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

15.   **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. Conley v. Sears, Roebuck, 1:97cv11149 (D.Mass); Fisher v. Lechmere Inc., 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. Bessette v. Avco Financial Services, 230 F.3d 439 (1st Cir. 2000).

16.   **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.   Hidden finance charges resulting from pass-on of discounts on auto purchases. Walker v. Wallace Auto Sales, Inc., 155 F.3d 927 (7th Cir. 1998).

b.   Misrepresentation of amounts disbursed for extended warranties. Taylor v. Quality Hyundai, Inc., 150 F.3d 689 (7th Cir. 1998); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); Slawson v. Currie Motors Lincoln Mercury, Inc., 94 C 2177, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 5, 1995); Cirone-Shadow v. Union Nissan, Inc., 94 C 6723, 1995 U.S.Dist. LEXIS 1379 (N.D.Ill., Feb. 3, 1995), later opinion, 1995 U.S.Dist. LEXIS 5232 (N.D.Ill., April 20, 1995) (same); Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302 (N.D.Ill. 1995); Shields v. Lefta, Inc., 888 F. Supp. 891 (N.D.Ill. 1995).

c.   Spot delivery. Janikowski v. Lynch Ford, Inc., 98 C 8111, 1999 U.S. Dist. LEXIS 3524 (N.D.Ill., March 11, 1999); Diaz v. Westgate Lincoln Mercury, Inc., 93 C 5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); Grimaldi v. Webb, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

d.   Force placed insurance. Bermudez v. First of America Bank Champion, N.A., 860 F.Supp. 580 (N.D.Ill. 1994); Travis v. Boulevard Bank, 93 C 6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill., 1995); Moore v. Fidelity Financial Services, Inc., 884 F. Supp. 288 (N.D.Ill. 1995).

e.   Improper obligation of cosigners. Lee v. Nationwide Cassell, 174 Ill.2d 540, 675 N.E.2d 599 (1996); Taylor v. Trans Acceptance Corp., 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); Qualkenbush v. Harris Trust & Sav. Bank, 219 F. Supp. 2d 935 (N.D. Ill. 2002).

f.   Evasion of FTC holder rule. Brown v. LaSalle Northwest Nat'l Bank, 148 F.R.D. 584 (N.D.Ill. 1993), 820 F.Supp. 1078 (N.D.Ill. 1993), and 92 C 8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

17.   These cases also had a substantial effect on industry practices. The warranty cases, such as Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler, and Shields, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

18.    **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions.  Livingston v. Fast Cash USA, Inc., 753 N.E.2d 572 (Ind. Sup. Ct. 2001); Hamm v. Ameriquest Mortg. Co., 506 F.3d 525 (7th Cir.  2007); Handy v. Anchor Mortg. Corp., 464 F.3d 760 (7th Cir. 2006); Williams v. Chartwell Fin. Servs., 204 F.3d 748 (7th Cir. 2000); Hubbard v. Ameriquest Mortg. Co., 05 C 389, 2008 U.S. Dist. LEXIS 75799 (N.D.Ill., September 30, 2008); Martinez v. Freedom Mortg. Team, Inc., 527 F. Supp. 2d 827 (N.D.Ill. 2007); Pena v. Freedom Mortg. Team, Inc., 07 C 552,  2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007);     . Miranda v. Universal Fin. Group, Inc., 459 F. Supp. 2d 760 (N.D.Ill. 2006); Parker v. 1-800 Bar None, a Financial Corp., Inc., 01 C 4488, 2002 WL 215530 (N.D.Ill.,  Feb. 12, 2002); Gilkey v. Central Clearing Co., 202 F.R.D. 515 (E.D.Mich. 2001);  Van Jackson v. Check 'N Go of Ill., Inc., 114 F.Supp.2d 731 (N.D.Ill. 2000), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000), 123 F.Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F.Supp. 2d 1085 (N.D.Ill. 2000); Henry v. Cash Today, Inc., 199 F.R.D. 566 (S.D.Tex.  2000); Donnelly v. Illini Cash Advance, Inc., 00 C 94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); Jones v. Kunin, 99-818-GPM, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); Davis v. Cash for Payday, 193 F.R.D. 518 (N.D.Ill. 2000); Reese v. Hammer Fin. Corp., 99 C 716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); Pinkett v. Moolah Loan Co., 99 C 2700, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); Gutierrez v. Devon Fin. Services, 99 C 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); Vance v. National Benefit Ass'n, 99 C 2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

19.    **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.    Phony nonfiling insurance.  Edwards v. Your Credit Inc., 148 F.3d 427 (5th Cir. 1998); Adams v. Plaza Finance Co., 168 F.3d 932  (7th Cir. 1999); Johnson v. Aronson Furniture Co., 96 C 117, 1997 U.S. Dist. LEXIS 3979 (N.D. Ill., March 31, 1997).

b.    The McCarran Ferguson Act exemption.  Autry v. Northwest Premium Services, Inc., 144 F.3d 1037 (7th Cir. 1998).

c.    Loan flipping.  Emery v. American General, 71 F.3d 1343 (7th Cir. 1995).  Emery limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.    Home improvement financing practices.  Fidelity Financial Services, Inc. v. Hicks, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; Heastie v. Community Bank of Greater Peoria,  690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).  Heastie granted certification of a class of over 6,000 in a home improvement fraud case.

e.    Arbitration clauses.  Wrightson v. ITT Financial Services, 617 So.2d 334 (Fla. 1st DCA 1993).

f.    Insurance packing.  Elliott v. ITT Corp., 764 F.Supp. 102 (N.D.Ill.

1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

     20.    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include Lundquist v. Security Pacific Automotive Financial Services Corp., Civ. No. 5:91-754 (TGFD) (D.Conn.), aff'd, 993 F.2d 11 (2d Cir. 1993); Kedziora v. Citicorp Nat'l Services, Inc., 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91 C 3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); Johnson v. Steven Sims Subaru and Subaru Leasing, 92 C 6355, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); McCarthy v. PNC Credit Corp., 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); Kinsella v. Midland Credit Mgmt., Inc., 91 C 8014, 1992 U.S.Dist. LEXIS 1405, 1992 WL 26908 (N.D.Ill. 1992); Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994); Black v. Mitsubishi Motors Credit of America, Inc., 94 C 3055, 1994 U.S.Dist. LEXIS 11158 (N.D.Ill., August 10, 1994); Simon v. World Omni Leasing Inc., 146 F.R.D. 197 (S.D.Ala. 1992). Settlements in such cases include Shepherd v. Volvo Finance North America, Inc., 1-93-CV-971 (N.D.Ga.)($8 million benefit); McCarthy v. PNC Credit Corp., 291 CV 00854 PCD (D.Conn.); Lynch Leasing Co. v. Moore, 90 CH 876 (Circuit Court of Cook County, Illinois) (class in auto lease case was certified for litigation purposes, partial summary judgment was entered, and case was then settled); Blank v. Nissan Motor Acceptance Corp., 91 L 8516 (Circuit Court of Cook County, Illinois); Mortimer v. Toyota Motor Credit Co., 91 L 18043 (Circuit Court of Cook County, Illinois); Duffy v. Security Pacific Automotive Financial Services, Inc., 93-729 IEG (BTM) (S.D.Cal., April 28, 1994).

     21.    Lundquist and Highsmith are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the Lundquist case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

     22.    **Collection practices:** The firm has brought a number of cases under the Fair Debt Collection Practices Act, both class and individual. Decisions in these cases include: Jenkins v. Heintz, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); Fields v. Wilber Law Firm, P.C., 383 F.3d 562 (7th Cir. 2004); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534 (7th Cir. 2003) (coverage of debt buyers); Peter v. GC Servs. L.P., 310 F.3d 344 (5th Cir. 2002); Nielsen v. Dickerson, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); Boyd v. Wexler, 275 F.3d 642 (7th Cir. 2001); Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872 (7th Cir. 2000); Johnson v. Revenue Management Corp., 169 F.3d 1057 (7th Cir. 1999); Keele v. Wexler & Wexler, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. 1995) (merits), aff'd, 149 F.3d 589 (7th Cir. 1998); Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232 (2nd Cir. 1998); Young v. Citicorp Retail Services, Inc., .97-9397, 1998 U.S.App. LEXIS 20268 (2nd Cir. 1998); Charles v. Lundgren & Assocs., P.C., 119 F.3d 739 (9th Cir. 1997); Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996), aff'g Avila v. Van Ru Credit Corp., 94 C 3234, 1995 U.S.Dist. LEXIS 461 (N.D.Ill., Jan. 10, 1995), later opinion, 1995 U.S.Dist. LEXIS 1502 (N.D.Ill., Feb. 6, 1995), later opinion, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 14, 1995); Tolentino v. Friedman, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); Ramirez v. Apex Fin. Mgmt., LLC, 567 F. Supp. 2d 1035 (N.D.Ill. 2008); Cotton v. Asset Acceptance, LLC, 07 C

5005, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); Buford v. Palisades Collection, LLC, 552 F. Supp. 2d 800 (N.D.Ill. 2008); Martin v. Cavalry Portfolio Servs., LLC, 07 C 4745, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); Ramirez v. Palisades Collection LLC, 250 F.R.D. 366 (N.D.Ill. 2008); Hernandez v. Midland Credit Mgmt., 04 C 7844, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., March 6, 2007, amended Sept. 25, 2007) (balance transfer program); Blakemore v. Pekay, 895 F.Supp.972 (N.D.Ill. 1995); Oglesby v. Rotche, 93 C 4183, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 4, 1993), later opinion, 1994 U.S.Dist. LEXIS 4866 (N.D.Ill., April 15, 1994); Laws v. Cheslock, 98 C 6403, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); Davis v. Commercial Check Control, Inc., 98 C 631, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); Hoffman v. Partners in Collections, Inc., 93 C 4132, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); Vaughn v. CSC Credit Services, Inc., 93 C 4151, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); Beasley v. Blatt, 93 C 4978, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 14, 1994); Taylor v. Fink, 93 C 4941, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); Gordon v. Fink, 93 C 4152, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); Brujis v. Shaw, 876 F.Supp. 198 (N.D.Ill. 1995).

23.     Jenkins v. Heintz is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. I argued it before the Supreme Court and Seventh Circuit. Avila v. Rubin is a leading decision on phony "attorney letters."

24.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, primarily as class actions. One line of cases alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. Important decisions in this area include: Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004), Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Perry v. First National Bank, 459 F.3d 816 (7th Cir. 2006); Murray v. Sunrise Chevrolet, Inc., 441 F. Supp.2d 940 (N.D. Ill. 2006); Shellman v. Countrywide Home Loans, Inc., 1:05-CV-234-TS, 2007 U.S. Dist. LEXIS 27491 (N.D.Ind., April 12, 2007); In re Ocean Bank, 06 C 3515, 2007 U.S. Dist. LEXIS 28973 (N.D.Ill., March 16, 2007), later opinion, 2007 U.S. Dist. LEXIS 29443 (N.D. Ill., Apr. 9, 2007); Asbury v. People's Choice Home Loan, Inc., 05 C 5483, 2007 U.S. Dist. LEXIS 17654 (N.D.Ill., March 12, 2007); Claffey v. River Oaks Hyundai, Inc., 238 F.R.D. 464 (N.D.Ill. 2006); Murray v. IndyMac Bank, FSB, 461 F.Supp.2d 645 (N.D.Ill. 2006); Kudlicki v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81103 (N.D. Ill., Nov. 2, 2006); Thomas v. Capital One Auto Finance, Inc., 2006 U.S. Dist. LEXIS 81358 (N.D. Ill., Oct. 24, 2006); Pavone v. Aegis Lending Corp., 2006 U.S. Dist. LEXIS 62157 (N.D. Ill., Aug. 31, 2006); Murray v. E*Trade Financial Corp., 2006 U.S. Dist. LEXIS 53945 (N.D. Ill., July 19, 2006); Bonner v. Home 123 Corp., 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006); Murray v. Sunrise Chevrolet , Inc., 2006 U.S. Dist. LEXIS 19626 (N.D. Ill., Mar. 30, 2006); and Murray v. Finance America, LLC, 2006 U.S. Dist. LEXIS 7349 (N.D. Ill., Jan 5, 2006). More than 15 such cases have been settled on a classwide basis.

25.     **Class action procedure:** Important decisions include Crawford v. Equifax Payment Services, Inc., 201 F.3d 877 (7th Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th Cir. 1999); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997); and Gordon v. Boden, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

26.     **Landlord-tenant:** The firm has brought more than 20 class actions

against landlords to enforce tenants' rights. Claims include failing to pay interest on security deposits or commingling security deposits. Reported decisions include <u>Wang v. Williams</u>, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); <u>Dickson v. West Koke Mill Vill. P'Ship</u>, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and <u>Onni v. Apt. Inv. & Mgmt. Co.</u>, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

27. **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: <u>American Family Mut. Ins. Co. v. C.M.A. Mortg., Inc.</u>, 1:06-cv-1044-SEB-JMS, 2008 U.S. Dist. LEXIS 30233 (S.D.Ind. March 31, 2008); <u>Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.</u>, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); <u>Pietras v. Sentry Ins. Co.</u>, 06 C 3576, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); <u>Auto-Owners Ins. Co. v. Websolv Computing, Inc.</u>, 06 C 2092, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); <u>Nat'l Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.</u>, 06 C 5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); <u>Nautilus Ins. Co. v. Easy Drop Off, LLC</u>, 06 C 4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

28. **Debtors' rights.** Important decisions include: <u>Ramirez v. Palisades Collection LLC</u>, 07 C 3840, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (Illinois statute of limitations for credit card debts); <u>Parkis v. Arrow Fin. Servs.</u>, 07 C 410, 2008 U.S. Dist. LEXIS 1212 (N.D. Ill., Jan. 8, 2008) (same); <u>Rawson v. Credigy Receivables, Inc.</u>, 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); <u>Jones v. Kunin</u>, 99-818-GPM, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); <u>Qualkenbush v. Harris Trust & Sav. Bank</u>, 219 F. Supp. 2d 935 (N.D. Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); <u>Wilson v. Harris N.A.</u>, 06 C 5840, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill., September 4, 2007).

29. **Telephone Consumer Protection Act.** The firm has brought a number of cases under the "junk fax" and "spam text message" provisions of the statute. Important decisions include: <u>Brill v. Countrywide Home Loans, Inc.</u>, 427 F.3d 446 (7th Cir. 2005); <u>Sadowski v. Med1 Online, LLC</u>, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); <u>Benedia v. Super Fair Cellular, Inc.</u>, 07 C 01390, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., September 26, 2007); <u>Centerline Equip. Corp. v. Banner Pers. Serv.</u>, 545 F. Supp. 2d 768 (N.D.Ill. 2008).

30. Some of the other reported decisions in our cases include: <u>Elder v. Coronet Ins. Co.</u>, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); <u>Smith v. Keycorp Mtge., Inc.</u>, 151 B.R. 870 (N.D.Ill. 1992); <u>Gordon v. Boden</u>, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); <u>Armstrong v. Edelson</u>, 718 F.Supp. 1372 (N.D.Ill. 1989); <u>Newman v. 1st 1440 Investment, Inc.</u>, 89 C 6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); <u>Mountain States Tel. & Tel. Co. v. District Court</u>, 778 P.2d 667 (Colo. 1989); <u>Disher v. Fulgoni</u>, 124 Ill.App.3d 257, 464 N.E.2d 639, 643 (1st Dist. 1984); <u>Harman v. Lyphomed, Inc.</u>, 122 F.R.D. 522 (N.D.Ill. 1988); <u>Haslam v. Lefta, Inc.</u>, 93 C 4311, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); <u>Source One Mortgage Services Corp. v. Jones</u>, 88 C 8441, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994).

31.      Gordon v. Boden is the first decision approving "fluid recovery" in an Illinois class action. Elder v. Coronet Insurance held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.


_____
Daniel A. Edelman


Edelman, Combs, Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)